**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE TRAVELERS INSURANCE COMPANY** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 05-1252C** |
| | ) | **(Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**JOINT STIPULATION OF MATERIAL FACTS**

Pursuant to Rule 56(h)(3) of the Rules of the United States Court of Federal Claims, the parties submit this Joint Stipulation of Material Facts. The parties stipulate to these facts for the purposes of their dispositive motions. If dispositive motions do not fully resolve the case, the parties reserve the right to introduce additional evidence at trial.

(1) In or about April 2003, the Government, acting through the United States Army Corps of Engineers, New England Military District, entered into Contract No. DACW33-03-C-0006 ("Contract") with M.A.T. Marine, Inc. ("M.A.T.") for a project designated as Sector Gates Repair, New Bedford, Massachusetts ("Project").

(2) On or about April 8, 2003, Gulf, as surety for M.A.T., provided a performance bond ("Performance Bond") and a payment bond ("Payment Bond") for the Project in accordance with the Miller Act, 40 U.S.C. § 270 et seq.

(3) The Performance Bond and the Payment Bond were received and accepted by the Government. True and accurate copies of the Performance Bond and Payment Bond are attached as Exhibit 1 to this Joint Stipulation.

(4) By letter dated April 23, 2004, Gulf notified the Government that Gulf had made actual payments in furtherance of its bond obligations, including a payment to one of M.A.T.'s subcontractors and loss adjustment expenses, totaling $14,025.85. The Government was further notified in that same letter that Gulf had received an additional $21,276.55 in unsettled payment bond claims.

(5) In Gulf's April 23, 2004 letter, the Government was requested to withhold an additional $21,276.55 from any further payments to M.A.T., over and above the $14,025.85, and was directed that no payments from those withholdings be released to or for the benefit of M.A.T. without Gulf's prior, written consent. A true and accurate copy of Gulf's April 23, 2004 notice letter is attached as Exhibit 2 to this Joint Stipulation.

(6) As reflected on the Certified Mail Receipt included with Exhibit 2, the Government received a copy of Gulf's April 23, 2004 letter by certified mail on May 7, 2004.

(7) On or about May 13, 2004, the Government made two wire transfers into M.A.T.'s account totaling $32,718.99. At the time of those wire transfers, M.A.T.'s work under the Contract was completed and had been accepted by the Government.

(8) Gulf has made payments to three of M.A.T.'s subcontractors and suppliers totaling $65,122.50. Gulf received a full and final release from each of the three entities paid. True and accurate copies of Gulf's checks to those subcontractors and suppliers and the releases Gulf received are attached as Exhibit 3 to this Joint Stipulation.

(9) The payments made by Gulf to M.A.T.'s subcontractors and suppliers for the Project were made pursuant to the Payment Bond provided for the Project.

(10) On or about December 2, 2005, Gulf filed suit in this Court, claiming that the $32,718.99 paid to M.A.T. was improper and that Gulf is equitably subrogated to the contract rights of M.A.T.

(11) Gulf has not filed suit against M.A.T to recover it losses in connection with the payment bond provided for the Project. M.A.T. has filed for bankruptcy protection.

(12) If dispositive motions do not fully resolve this case, the stipulation of material fact shall be void.

March 10, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Robert G. Barbour
ROBERT G. BARBOUR
Watt, Tieder, Hoffar & Fitzgerald, LLP
7929 Westpark Drive, Ste. 400
McLean, VA 22102
Tel. (703) 749-1000
Fax (703) 893-8029

s/ Doris S. Finerman
DORIS S. FINERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0300
Fax (202) 305-7643

Attorneys for Defendant

# PERFORMANCE BOND

*(See Instructions on reverse)*

Bond No. AE6298190

| DATE BOND EXECUTED *(Must be same or later than date of contract)* | OMB No.: 9000-0045 |
| --- | --- |
| 4/8/2003 | Expires: 09/30/98 |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

**PRINCIPAL** *(Legal name and business address)*

M.A.T. MARINE, INC.
P.O. BOX 974
MONUMENT BEACH, MA 02553

**TYPE OF ORGANIZATION** *("X" one)*

☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

**STATE OF INCORPORATION**

MASSACHUSETTS

**SURETY(IES)** *(Name(s) and business address(es))*

Gulf Insurance Company
P.O. Box 131771
Dallas, TX 75313

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| --- | --- | --- | --- |
| | 683 | 560 | 00 |

| CONTRACT DATE | CONTRACT NO. |
| --- | --- |
| 4/8/2003 | DACW33-03-C-0006 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
| --- | --- | --- | --- | --- |
| SIGNATURE(S) | [signature] (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
| --- | --- | --- |
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
| --- | --- | --- | --- | --- |
| NAME & ADDRESS | Gulf Insurance Company P.O.Box 131771, Dallas, TX 75313 | STATE OF INC. Connecticut | LIABILITY LIMIT $ 425,333,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. Shelly Andrade, Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

EXHIBIT 1

CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1 | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $. | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| BOND PREMIUM | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|
| | 25 | 17,089.00 |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# PAYMENT BOND

Bond No.: AE6298190 *(See instructions on reverse)*

DATE BOND EXECUTED *(Must be same or later than date of contract)*: 4/8/2003

OMB No.: 9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL *(Legal name and business address)*
M.A.T. MARINE, INC.
P.O. BOX 974
MONUMENT BEACH, MA 02553

TYPE OF ORGANIZATION *("X" one)*
☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

STATE OF INCORPORATION: MASSACHUSETTS

SURETY(IES) *(Name(s) and business address(es))*
Gulf Insurance Company
P.O. Boc 131771
Dallas, TX 75313

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| | 683 | 560 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 4/8/2003 | DACW33-03-C-0006 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | [signature] (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | President | | | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) *(Typed)* | | |

**CORPORATE SURETY(IES)**

| SURETY A | | | |
|---|---|---|---|
| NAME & ADDRESS | Gulf Insurance Company P.O.Box 131771, Dallas, TX 75313 | STATE OF INC.: Connecticut | LIABILITY LIMIT: $ 425,333,000.00 |
| SIGNATURE(S) | 1. [signature] | 2. | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Shelly Andrade, Attorney-in-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

## CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**GULF INSURANCE COMPANY**
HARTFORD, CONNECTICUT
**POWER OF ATTORNEY**

**ORIGINALS OF THIS POWER OF ATTORNEY ARE PRINTED ON BLUE SAFETY PAPER WITH TEAL INK. DUPLICATES SHALL HAVE THE SAME FORCE AND EFFECT AS AN ORIGINAL ONLY WHEN ISSUED IN CONJUNCTION WITH THE ORIGINAL.**

KNOW ALL MEN BY THESE PRESENTS: That the Gulf Insurance Company, a corporation duly organized under the laws of the State of Connecticut, having its principal office in the city of Irving, Texas, pursuant to the following resolution, adopted by the Finance & Executive Committee of the Board of Directors of the said Company on the 10th day of August, 1993, to wit:

"RESOLVED, that the President, Executive Vice President or any Senior Vice President of the Company shall have authority to make, execute and deliver a Power of Attorney constituting as Attorney-in-Fact, such persons, firms, or corporations as may be selected from time to time; and any such Attorney-in-Fact may be removed and the authority granted him revoked by the President, or any Executive Vice President, or any Senior Vice President, or by the Board of Directors or by the Finance and Executive Committee of the Board of Directors.

RESOLVED, that nothing in this Power of Attorney shall be construed as a grant of authority to the attorney(s)-in-fact to sign, execute, deliver or otherwise issue a policy or policies of insurance on behalf of Gulf Insurance Company.

RESOLVED, that the signature of the President, Executive Vice President or any Senior Vice President, and the Seal of the Company may be affixed to any such Power of Attorney or any certificate relating thereto by facsimile, and any such powers so executed and certified by facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond and documents relating to such bonds to which they are attached."

Gulf Insurance Company does hereby make, constitute and appoint

BOND NUMBER AE 6298190

PRINCIPAL: NAME, ADDRESS CITY, STATE, ZIP

M.A.T. Marine, Inc.
P.O. Box 974
Monument Beach, MA 02553

EFFECTIVE DATE: April 18, 2003

CONTRACT AMOUNT: $ 683,560.00

BOND AMOUNT: $ 683,560.00

**~~~~ Elizabeth J. Geigen, William F. Hertel, James L. Mastors, Joseph A. Servant, Shelly Andrade ~~~~**

its true and lawful attorney(s)-in-fact, with full power and authority hereby conferred in its name, place and stead, to sign, execute, acknowledge and deliver in its behalf, as surety, any and all bonds and undertakings of suretyship, and to bind Gulf Insurance Company thereby as fully and to the same extent as if any bonds, undertakings and documents relating to such bonds and/or undertakings were signed by the duly authorized officer of the Gulf Insurance Company and all the acts of said attorney(s)-in-fact, pursuant to the authority herein given, are hereby ratified and confirmed.

The obligation of the Company shall not exceed one million (1,000,000) dollars.

**IN WITNESS WHEREOF, the Gulf Insurance Company has caused these presents to be signed by any officer of the Company and its Corporate Seal to be hereto affixed.**

GULF INSURANCE COMPANY CORPORATE SEAL CONNECTICUT

**GULF INSURANCE COMPANY**

Lawrence P. Miniter
**Lawrence P. Miniter**
**Executive Vice President**

**STATE OF NEW YORK ) SS**
**COUNTY OF NEW YORK )**

**On the 1st day of October, 2001 A.D., before me came Lawrence P. Miniter, known to me personally who being by me duly sworn, did depose and say; that he resides in the County of Bergen, State of New Jersey; that he is the Executive Vice President of the Gulf Insurance Company, the corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to the said instruments is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name, thereto by like order.**

ANGIE MAHABIR-BEGAZO NOTARY PUBLIC STATE OF NEW YORK

Angie Mahabir-Begazo
**ANGIE MAHABIR-BEGAZO**
**Notary Public, State of New York**
**No. 01MA6019988**
**Qualified in Kings County**
**Commission Expires February 16, 2007**

**STATE OF NEW YORK ) SS**
**COUNTY OF NEW YORK )**

**I, the undersigned, Senior Vice President of the Gulf Insurance Company, a Connecticut Corporation, DO HEREBY CERTIFY that the foregoing and attached POWER OF ATTORNEY remains in full force.**

**Signed and Sealed at the City of New York.**

AE6298190 *1391100*

GULF INSURANCE COMPANY CORPORATE SEAL CONNECTICUT

**Dated the** 8th **day of** April **, 20** 03

George Biancardi
**George Biancardi**
**Senior Vice President**

Gulf
Insurance Group

Gulf Insurance Group
125 Broad Street, 8th Floor
New York, NY 10004
Phone: 212.291.3000

## SECRETARY'S CERTIFICATE

I, Spiro K. Bantis, do hereby certify as follows:

(1) that I am the duly elected and acting Secretary of Gulf Insurance Company, and

(2) that the attached is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been amended or revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand on this day, April 8th, ______ 2003.

Spiro K. Bantis
Secretary

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW
7929 Westpark Drive, Suite 400
McLean, Virginia 22102-4224
Telephone: 703-749-1000
Facsimile: 703-893-8029
www.wthf.com

Robert G. Barbour
(703) 749-1052
rbarbour@wthf.com

John B. Tieder, Jr.
Robert G. Watt
Julian F. Hoffar
Robert M. Fitzgerald
Robert K. Cox
Lewis J. Baker
Wayne G. Tatusko
Richard G. Mann, Jr.
Henry D. Danforth
Carter B. Reid
Mark A. Sgarlata
Michael G. Long*
Edward J. Parrott
Paul A. Varela
Vivian Katsantonis
Kathleen O. Barnes
Shelly L. Ewald
Christopher J. Brasco
John G. Lavoie
Robert C. Niesley*
Colin J. Smith
Jean V. Miller
Gregory J. Dukellis*
Fred A. Mendicino
William J. Burch*
Michael D. Germain*
Robert G. Barbour
Keith C. Phillips
Marybeth Z. Gaul
Timothy E. Heffernan*
W. Drew Mallender
James M. Donahue
Bennett J. Lee
Todd R. Metz
Michael R. Gandee*
Michael P. Hutchins*
Jeffrey J. Renzulli
Joseph S. Guarino
Lewis I. Askew, Jr.
Erica S. Beardsley
Erica B. Robinett*
David F. McPherson*
Cynthia M. Lane*
Harish Mirchandani
David R. Johnson*
Scott W. Kowalski
C. Kelly Skrabak
J. Brian Cashmere
Joseph C. McGowan*
Daniel J. Alexander*
Geoffrey A. Graves*
C. William Groscup
Kevin J. McKeon
John R. Marking*
Frank S. Murray
David E. Nemeth, Jr.*
Michael M. Suga*
Michelle G. Hicks
Jason D. Blatt
Christopher M. Rogers*
Alexander N. Lamme
Timothy E. Elliott*
James M. Phelps
Justin S. Hawkins
Arnie B. Mason
Viktor V. Pregel
Jowita L. Wysocka*
Kirk E. Niemi
Todd W. Blischke*
Matthew E. Vinciguerra
Kirk J. McCormick
Howard J. Manheimer
Julie L. Gentry*
Kimberly A. Mulligan
Brian G. Muse
Christopher M. Harris
Erik B. von Zeipel*
Christopher M. Burke
Samuel B. Franck
Franci E. Gardner
Donna H. Tobar*
Michael M. Fernandez*
Lauren S. Altman*
Kirsten A. Roe*
Michael D. Kiffney
John P. Bean
Brian S. Kelly
Benjamin T. Benumof*
Henry C. Ma*
Gregory T. Gledhill
Laura R. Schempf
*Not Admitted In Virginia

April 23, 2004

**<u>VIA FACSIMILE AND CERTIFIED MAIL</u>**

Maurice Beaudoin, P.E.
Administrative Contracting Officer
Department of the Army
New England District, Corps of Engineers
103 Sawyer Street
New Bedford, MA 02746-2448

| | |
|---|---|
| **Principal:** | **M.A.T. Marine, Inc.** |
| **Obligee:** | **United States of America (Department of the Army)** |
| **Surety:** | **Gulf Insurance Company** |
| **Bond No.:** | **AE6298190** |
| **Project:** | **New Bedford-Fairhaven Hurricain Barrier, New Bedford, MA** |
| **Contract:** | **DACW33-03-C-0006** |

Dear Mr. Beaudoin:

This letter is written to advise you that Gulf Insurance Company ("Gulf") has retained my law firm in connection with the above-referenced Project and to demand that certain payments due or to become due under the above-referenced Contract be withheld from M.A.T. Marine, Inc. ("M.A.T.") and paid over to Gulf or held until Gulf provides its consent to payment. Gulf has a right of subrogation in those Contract balances because it paid off materialmen's claims brought under the above-referenced bond.

In connection with Gulf's demand, I have attached a Project Summary Report, which reflects that Gulf's actual payments to date in furtherance of its bond obligations is $14,025.85, including a net $11,900.00 payment to one of M.A.T.'s subcontractors and $2,125.85 in loss adjustment expenses paid to Contract Operations Planning, LLC. The following is a breakdown of those costs:

**Payments to Subcontractors/Suppliers**

- Environmental Containment Systems, LLC $ 11,900.00

**Payments for Loss Adjustment Expenses**

- Contract Operations Planning, LLC $ 2,125.85

**TOTAL PAYMENTS $ 14,025.85**

Gulf hereby demands that the Government pay to Gulf the amount of $14,025.85 out of any Contract funds remaining in the Government's possession, including any and all Contract balances earned by M.A.T. but unpaid at this time (including retained percentages), and any amounts that have been, or are hereinafter determined to be due M.A.T. for extra work performed. Gulf makes this demand pursuant to its rights of equitable subrogation and the terms of the agreement of indemnity executed by M.A.T., a copy of which is attached hereto. This letter will serve as Gulf's agreement to hold the Government harmless and to indemnify the Government against any loss incurred as a result of its payment to Gulf of the Contract balances at issue.

This letter will also serve as notice to the Government that, over and above the $14,025.85 in actual losses incurred to date, Gulf has received an additional $21,276.55 in unsettled payment bond claims. Those claims are reflected on the attached Project Summary Report. In connection with those claims, Gulf requests that the Government withhold an additional amount of $21,276.55 from any further payments to M.A.T. and that no payments from those withholdings be released to or for the benefit of M.A.T. without Gulf's prior, written consent. The legal support for Gulf's demand includes, but is not limited to, Federal Acquisition Regulation 28.106-7 and the United States Court of Federal Claims decision in Transamerica Premier Insurance Company v. United States, 32 Fed. Cl. 308 (1994).

If you have any questions regarding any of the above, please do not hesitate to call me at the number listed above.

Very truly yours,

WATT, TIEDER, HOFFAR,
& FITZGERALD, L.L.P.

Robert G. Barbour

RGB:aj
Attachments

cc: Mr. Greg Miracle
Mr. Raymond Zetts

04/23/04
09:35:56 AM

# Gulf Insurance Company

1

## Project Summary

As Of Date:04/23/2004

**Principal Name:** M.A.T. Marine, Inc.
**Bond Number:** AE6298190
**Penalty: $** 683,560.00

| Loss Date | Effective Date | Last Date |
|---|---|---|
| 08/14/2003 | 04/08/2003 | 04/06/2004 |

| | |
|---|---|
| Obligee: | U. S. Army Corps of Engineers |
| Project: | Sector Gates, New Bedford |
| Agent: | Surety Associates, LLC |
| Reinsurance: | Gulf Reinsurance 2001+ Contract |

| | |
|---|---|
| Status: | Open Claim |
| Adjuster: | Gregory N. Miracle, Esq |
| Bond Type: | Final Bond |
| SBG #: | |

**Incurred Loss**

| | |
|---|---|
| Surety Payments: | 14,025.85 |
| Available Reserves: | 24,859.63 |
| Available Recoveries: | 0.00 |
| **Total Incurred Loss:** | 38,885.48 |

**Surety Payments**

| | |
|---|---|
| Paid From Loss: | 11,900.00 |
| Paid From LAE: | 2,125.85 |
| **Total Paid:** | 14,025.85 |

**Available Reserves**

| | |
|---|---|
| Loss Reserve: | 21,276.55 |
| LAE Reserve: | 3,583.08 |
| **Total Reserve:** | 24,859.63 |

| Contract Proceeds | Contract Price | Change Orders | Net Draws | Retainage | Earned % | Unearned | Available |
|---|---|---|---|---|---|---|---|
| | 683,560 | 0 | 0 | 0 | 0 | 683,560 | 683,560 |

**Payment Claims:**

| Claimant Name | Estimated Claims | Formal Claims | Adjustments | Recovery Payments | Surety Payments | Incurred Loss | Outstanding Balance |
|---|---|---|---|---|---|---|---|
| Environmental Containment Systems, LLC | | 18,850.00 | | 6,950.00 | 11,900.00 | 11,900.00 | |
| Godwin Pumps Of America, Inc. | | 21,276.55 | | | | 21,276.55 | 21,276.55 |
| **Total Payment Claims:** | | 40,126.55 | | 6,950.00 | 11,900.00 | 33,176.55 | 21,276.55 |
| **Total All Claims:** | | 40,126.55 | | 6,950.00 | 11,900.00 | 33,176.55 | 21,276.55 |

**LAE Costs:**

| Payee Name | Estimated Claims | Formal Claims | Adjustments | Recovery Payments | Surety Payments | Incurred Loss | Outstanding Balance |
|---|---|---|---|---|---|---|---|
| Contract Operations Planning, LLC | | 2,125.85 | | | 2,125.85 | 2,125.85 | |
| **Total LAE Costs:** | | 2,125.85 | | | 2,125.85 | 2,125.85 | |
| **Total Claim:** | | 42,252.40 | | 6,950.00 | 14,025.85 | 35,302.40 | 21,276.55 |

| **Total Recoveries:** | Collateral | Indemnity | Contract Proceeds |
|---|---|---|---|
| | .00 | 6,950.00 | .00 |

# GENERAL INDEMNITY AGREEMENT

This instrument represents an Agreemen between the Surety (as defined in IX.A. below), and the undersigned, hereinafter referred to as the Indemnitors (which term as used herein includes the undersigned Principal), for the purpose of indemnifying the Surety in connection with and as part of the consideration for any Bond (which word as used herein refers to any contractual obligation of suretyship, and any and all renewals, extensions, modifications, and substitutes thereof, undertaken by Surety for the Principal), which the Surety from time to time may Issue (which word as used herein refers to the preparation, execution, delivery, or procurement of or participation in any Bond) or may have Issued heretofore, the parties expressly acknowledging that execution of this Agreement and Issuance of any Bonds by the Surety at all times is in reliance on the faithful compliance by the Indemnitors with all the terms and conditions of this Agreement, including but not limited to the disclosure warranties set forth in VII.F.4 below.

**I. PREMIUMS:** For each and every Bond Issued for the Principal by the Surety, the Indemnitors will, at or before the time of execution or, in the case of a Bond renewal, extension, modification, or substitution, at the time of such renewal, extension, modification, or substitution, or in the case of a term premium, at or before the commencement of the term, pay or cause to be paid to the Surety or its Agent all premiums and other charges of the Surety therefor, computed in accordance with the Surety's scheduled rates prevailing at that time; and this premium payment obligation shall continue until the Surety is furnished with evidence satisfactory to the Surety of its release and discharge from the Bonds and from all liability by reason thereof. Failure of the Surety or its Agent to collect premiums when due shall not operate as a waiver of the Surety's right to such premiums; and failure of the Principal to pay premiums when due shall be deemed a Loss for purposes of this Agreement.

**II. INDEMNITY: A. GENERAL.** The Indemnitors hereby agree faithfully to perform and discharge, or see to the faithful performance and discharge of each and every obligation imposed on them (or any of them) by each and every Bond Issued by the Surety for the Principal, by each and every contract referenced in such Bonds, and by each and every provision of this Agreement. Accordingly, the Indemnitors further agree to exonerate, save harmless, indemnify, and keep indemnified the Surety from and against **ANY AND ALL LOSS WHATSOEVER**, including but not limited to all demands, claims, liabilities, damages, costs, charges, fees, expenses, suits, orders, judgments, adjudications, and any other Losses of whatever nature or kind, which the Surety pays or incurs or for which the Surety becomes liable or has reason to believe it is, may be, or may become liable (whether or not the Surety shall have paid out any sums on account of such Losses), for any reason whatsoever, including but not limited to: 1) The completion or fulfillment by the Surety of any obligations imposed on the Principal by any Bond or bonded contract; 2) The Surety's refusal to Issue any Bond, or the Surety's cancellation of any Bond pursuant to V.A.1. below; 3) The procurement of or attempt to procure a discharge or release from any Bond or from any liability arising to the Surety therefrom; 4) Loans, or guarantees of loans, or other extensions of credit, made by the Surety to or for the benefit of any Indemnitor; 5) Deposits paid by the Surety to any court, government agency, or person to obtain the Surety's discharge or release from any liability; 6) Enforcement of any part of this Agreement by the Surety against the Indemnitors; 7) The prosecution of any powers, rights, remedies, or defenses of the Indemnitors by the Surety as subrogee; 8) Fees, expenses, charges or costs associated with the Indemnitors' compliance with this Agreement or with demands made by the Surety pursuant to C below; 9) Interest on sums paid by the Surety for any of the above; and 10) Fees, expenses, charges and costs of personnel utilized by the Surety in connection with any of the above, whether on salary or retainer or otherwise, including attorneys, investigators, adjustors, accountants, engineers, consultants or any other experts or specialists deemed necessary by the Surety, and any travel, lodging and meal expense attendant thereto.

**B. SCOPE.** The Indemnitors agree that the duty hereunder to indemnify the Surety: 1) Applies to each and every Bond Issued or procured for or requested by the Principal (or any Indemnitor acting on behalf of the Principal), whether contracting alone or as a joint venturer of any kind, including any and all Bonds Issued, procured, or requested prior to the execution of this Agreement; and 2) Continues (except as otherwise provided in Termination with respect to individual Indemnitors) until: a) the Surety is reimbursed for any and all Losses, as defined in A, arising out of any Bonds described in B.1, and is furnished evidence satisfactory to the Surety of its discharge or release from any further or future such Losses, or b) this Agreement is terminated by all the Indemnitors in accordance with VIII below, whichever occurs later.

**C. SPECIFIC DUTIES.** The duty of the Indemnitors set forth in A and B above to indemnify the Surety shall be an affirmative duty which shall include but not be limited to the specific affirmative duties listed below; and the Indemnitors agree to comply with any and all demands of the Surety to fulfill any or all of the following duties, within the time, in the manner, and upon the terms stated by the Surety in its demand or demands: 1) Procure the discharge of the Surety from any Bond and from all liability arising to the Surety therefrom; 2) Cure any alleged breach in any bonded contract and/or pay or settle any obligation arising therefrom; 3) Pay any Loss to such parties as the Surety directs; 4) Reimburse the Surety for all Losses paid or incurred by the Surety; 5) Provide such security (as defined in IV.) as the Surety deems adequate to secure it against Losses, or the risk of Losses; 6) Defend against any claim or suit and/or prosecute any right, remedy or power to recover Losses; 7) Provide evidence satisfactory to the Surety of such insurance coverage as the Surety may require; and 8) Provide information or documents, or provide any written authorization which the Surety may require for the Surety to obtain information or documents from third parties.

**D. JOINT AND SEVERAL LIABILITY.** The Indemnitors each agree that their duties and liability to the Surety shall be joint and several; that the Surety shall have no obligation to make demand upon or sue the Principal first before other Indemnitors, or to treat individual Indemnitor equally, evenly, or pro-rata in any manner or matter, including but not limited to those matters enumerated below; and that no Indemnitor's liability to the Surety shall be discharged or diminished in any way by the fact that: 1) Any Indemnitor contemplated by this Agreement is not bound, because that Indemnitor failed to execute this Agreement, or because that Indemnitor was adjudicated bankrupt or incompetent or because of any other reason whatsoever; 2) The Surety takes or demands collateral from one or more Indemnitors but not from other Indemnitors; or takes collateral of different kinds or in different amounts from different Indemnitors; or returns, releases, exchanges, applies, assigns, or exhausts, in whole or in part, collateral provided by one or more Indemnitors without similarly returning, releasing, exchanging, applying, assigning, or exhausting, in whole or in part, collateral provided by other Indemnitors; or one or more Indemnitors fail to provide collateral of the kind, in the amount and/or at the time promised or demanded; 3) The financial condition of any Indemnitor is better or worse than that of any other Indemnitor, or than that which may have been assumed when this Agreement was executed; 4) Any Indemnitor terminates this Agreement as provided in Termination; or the Surety releases one or more Indemnitors from this Agreement but fails or refuses to release other Indemnitors; or the Surety possesses, accepts, or releases General Indemnity Agreements other than this one which bind one or more Indemnitors hereto but not other Indemnitors hereto; 5) The Surety makes a demand or brings suit or settles a claim or suit, or appeals or fails to appeal a decision with respect to one or more Indemnitors but not with respect to other Indemnitors; or 6) The Surety gives notice of any kind to one or more Indemnitors but not to other Indemnitors; PROVIDED, however, that to the extent that the Surety collects funds from, or as subrogee of, or disposes of collateral provided by, one or more Indemnitors as recovery of Losses, the liability of each and every Indemnitor to the Surety for such Losses shall diminish pro tanto.

**E. ENFORCEMENT.** 1) In any suit hereunder or in any accounting between the Surety and the Indemnitors, an itemized statement of Losses sworn to by an officer of the Surety shall be prima facie evidence of the fact and extent of the liability hereunder of the Indemnitors to the Surety; and the Indemnitors hereby waive any and all right to assert that the Surety, by its acts or omissions, incurred more Loss than necessary or failed to recover as much as it might have, it being expressly understood that swiftness may be more critical than economy in fulfilling the spirit as well as the letter of the Surety's obligations under Bonds it Issues for the Principal. 2) Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any or all of the Indemnitors; and suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other or all of the Indemnitors on the same or any other cause or causes of action, whether theretofore or thereafter accruing. 3) The liability of the Indemnitors shall not be affected by the failure of the Principal to sign any Bond as Principal or otherwise; nor by any claim that other indemnity or security was to be given or obtained; nor by the release of any indemnity, Indemnitor or security; nor by the return, exchange or release of any collateral or security that may have been obtained.

**III. DISCLOSURE: A.** The Indemnitors agree to represent and report accurately, completely, and promptly to the Surety at all times that this Agreement is in effect, facts which relate, directly or indirectly, to the ability of the Principal or any other Indemnitor to perform and discharge his duties hereunder and further to notify the Surety, within 48 hours of discovery, of facts which 1) might give rise to any claims, suits or other Losses, regardless of whether such claims, suits or Losses arise out of or relate directly to any contracts bonded by the Surety, and regardless of whether the Indemnitors dispute any such claim, suit, or Loss, or 2) might indicate that a Jeopardy Event has occurred or is imminent.

**B.** The Indemnitors agree to cooperate fully with and to make no claim against the Surety on account of the Surety's efforts to obtain and examine information and/or documents and to conduct at any time the following inquiries and inspections, among others, with or without notice, all of which the Indemnitors hereby authorize and empower the Surety to conduct: 1) The Surety shall have free access to the books, records, and accounts of the Indemnitors, whether in the possession of the Indemnitors or third parties for the purpose of examining and copying them; 2) The Surety may solicit information and/or documents from third parties, including but not limited to banks, brokers, accountants, subcontractors, suppliers, joint venturers, obligees, prime contractors, or any other person, firm, corporation or public agency; and 3) The Surety may visit and physically inspect or interview any site, person, thing, or being which, in the opinion of the Surety, is involved in or may have an effect on any contract bonded by the Surety or on the ability of the Principal or any other Indemnitor, to perform his duties hereunder.

**C.** The Indemnitors agree to represent accurately and completely to Obligees, and to all other parties to whom the Surety might be liable under Bonds Issued for the Principal and to government authorities any and all such facts as the Principal and/or Indemnitors is or are obligated to disclose or attest to by contract or by operation of law; and the Indemnitors further agree to make no misrepresentation whatsoever to any of the above Obligees, parties, or authorities.

**D.** The Indemnitors hereby authorize and empower the Surety to furnish any information and/or documents, whether obtained as above or otherwise, which it now has or may hereafter acquire, to other persons, firms, corporation, or entities, only for the following purposes: 1) To fulfill the Surety's reporting requirements to government authorities, as may be required by statute or government regulation, and to insurance industry associations and/or rating services; 2) To procure or attempt to procure co-suretyship or reinsurance; or 3) To avoid all or part of any Loss.

**IV. SECURITY:** To secure their faithful performance of this Agreement, the Indemnitors hereby: A. Grant to the Surety a Security Interest in and to any of their property, real and personal, tangible and intangible, now owned or hereafter acquired, including all income and receipts therefrom and

increases and appreciation thereon [illegible] the following terms: 1) The Indemnitors may not cons[illegible] sell, [illegible]pate, transfer, pledge or otherwise dis- pose of the assets or property which [illegible] th[illegible] [sub]ject of this Security Interest without the prior w[illegible] [writte]n consent of the Surety unless (a) such assets or property are ordinarily consumed or sold in the normal course of the Indemnitors' business and (b) no Jeopardy Event has occurred; 2) The Indemnitors agree that this Agreement constitutes a Security Agreement and also a Financing Statement within the meaning of the Uniform Commercial Code (UCC); 3) If a Jeopardy Event occurs, the Surety shall have and may at its option exercise all of the powers, rights, and remedies of a Secured Party under the UCC; and the amount owed the Surety shall be determined in accordance with II.E.1. above; and if the Surety desires to dispose of any assets or property coming into its possession pursuant to this section, the Surety shall give the Indemnitors five days notice, which the Indemnitors hereby agree shall be sufficient; 4) Upon the termination of this Agreement in accordance with VIII, and all liability hereunder with respect to any Indemnitor, the Security Interest granted herein by that Indemnitor shall be deemed null and void and the Surety shall release its Security Interest in the assets and property of that Indemnitor;

B. Assign, convey, and transfer to the Surety, subject to the Indemnitors' right to use and possession of the items listed below prior to the occurrence of a Jeopardy Event (which right shall terminate upon the occurrence of a Jeopardy Event), all right, title and interest, whether legal or equitable, of the Indemnitors in and to: 1) All machinery, plant, premises, equipment, tools, materials, inventories and supplies of every nature and description, which are now or may hereafter be owned or possessed by any Indemnitor including any of the above which may have been purchased or ordered but not yet delivered, any or all of which the Surety may use, consume, alter, sell, lease or abandon as it deems necessary or desirable to complete any bonded contract of the Principal or recover any Losses for which the Indemnitors are liable hereunder; 2) All subcontracts let or to be let, and all Surety Bonds covering such subcontractors, and all materials and supplies embraced therein, in connection with any and all contracts covered by any Bond; 3) Any and all funds due or which may thereafter become due, whether for contract performance, change orders, retainage, claims, awards, settlements, interest or otherwise, under any and all contracts in which any or all of the Indemnitors have an interest, whether bonded by the Surety or not, pro- vided however, that where the terms of a contract or local law prohibit the assignment of contract proceeds, such contract proceeds shall be paid at the instruction of the Principal or of the Surety acting on the Principal's behalf into an Escrow of the type and subject to the terms set forth in F below; and if for any reason sums due under any contract are paid to the Indemnitors or any of them, such Indemnitors shall hold such funds as a trust for the same purposes as the trust raised by the Escrow described in F below; and 4) Any and all powers, rights, remedies or defenses, as the case may be, of the Indemnitors growing in any manner out of: (a) any bonded contract; (b) any insurance policy; (c) any notes or accounts receivable; (d) any and all claims, actions, causes of action, counterclaims, set-offs, and cross-claims whatsoever, against whomever, that an Indemnitor might assert to avoid or recover Losses.

C. Grant to the Surety a license for the use of the items described in B.1 above, for the same purposes and with the same powers as described there- in, in the event that the assignment in B.1 shall fail for any reason to give the Surety the right and power to utilize the items in B.1 to fulfill its bond obligations.

D. Agree to deposit with the Surety upon demand funds or other collateral of such kind, in such amount, at such time, and for such duration as the Surety may require, with the understanding that all collateral so deposited may be liquidated and applied by the Surety, at its sole discretion and with- out notice, to Losses of the Surety and shall, unless specifically stated otherwise in writing by the Surety, be conclusively deemed to stand as a pledge for all Bonds issued at any time by the Surety, including Bonds issued prior to the execution of this Agreement; and the Indemnitors shall, upon demand and at their own expense, furnish such appraisals of and such title and casualty insurance policies on any of the above collateral as the Surety may require.

E. Agree to submit upon demand to on-going monitoring of any or all of the projects or contracts bonded by the Surety, in such detail and with such frequency as the Surety may require; and such monitoring may include but shall not necessarily be limited to all of the inquiries and inspections which the Surety is empowered to conduct by III.B.; and all of the duties and provisions of III. shall apply to such monitoring; and the Indemnitors further agree to pay to the Surety or its designee when due any and all costs, expenses, and/or fees associated with such monitoring;

F. Agree that, upon demand the Principal shall instruct the Obligee of any Bond to make payments of all contract funds due the Principal, as such funds are defined in B.3 above, directly to and payable to an Escrow Agent selected by the Surety and governed by an Escrow Agreement executed by the Principal, the Surety, and the Escrow Agent, the expenses, fees, and charges for which the Indemnitors shall pay or reimburse the Surety; and all parties hereto agree that such an escrow shall not be construed as an assignment of contract proceeds, where local law or the terms of a contract pro- hibit such an assignment, but as a trust, for the payment of obligations incurred in the performance of the contract including any modifications there- of and for labor, materials, supplies, and services furnished in the prosecution of the work provided in such contract, and for all such other obligations in connection with such contract for which the Surety would be liable under the Bond, which trust also inures to the benefit of the Surety for any Loss, to which the Surety may be exposed under the Bond; and all parties hereto further agree that this Agreement and declaration shall also constitute notice of such trust.

**V. GENERAL POWERS OF THE SURETY:** A. The Indemnitors hereby authorize and empower the Surety, at its option and in its sole discretion, with or without notice to the Indemnitors, to: 1) Decline to issue any Bond, even when such Bond is required by the terms of a bid for which the Surety executed a Bid Bond or by the terms of a contract for which the Surety executed a Final Bond; and, where the Surety executes a Bond which by its terms or by operation of law converts from a Bid Bond into a Payment and/or Performance Bond upon the Obligee's acceptance of the bid bonded by the Surety, the Surety may in its sole discretion cancel the Bond after the Obligee's acceptance of the bid; 2) Take such steps as the Surety may deem necessary to procure for itself a discharge from any Bond and from any and all liability or Loss by reason thereof; 3) Fill in any blanks left herein or in any Bonds issued hereunder and correct any errors in any Bonds; modify any Bond or other document, whether supplied by an Obligee or other- wise, prior to executing such Bond or other document; and assent to a) any change whatsoever in any Bonds and/or in contracts referred to in such Bonds, and/or in general conditions, plans, and specifications incorporated in such contracts, including but not limited to any change in the time for the completion of said contracts; b) payments or advances on bonded contracts before the same may be due, c) any assignment, including taking an assignment, and/or d) execute (or assent to the execution of) any continuations, extensions, renewals, modifications, and/or substitutes for any Bonds, with the same or different conditions, provisions, obligees, and penalties; 4) Guarantee loans or other extensions of credit to, or to advance or lend money to any Indemnitor, as the Surety may see fit, without any obligation on the Surety to see to the proper application of the proceeds of such guar- antees, loans, and advances. 5) Determine whether any item of Loss shall be paid, settled, compromised, resisted, defended, or appealed and whether any effort to recover Losses shall be undertaken, settled, compromised, prosecuted, or appealed; and the Surety shall have the right to incur such expenses (and to receive reimbursement therefor from the Indemnitors) in handling a Loss or recovery as it shall deem necessary; and the Surety shall have the foregoing rights regardless of whether the Undersigned may have assumed or offered to assume the defense or prosecution of any item of Loss or recovery.

B. The Indemnitors individually and collectively hereby irrevocably nominate, constitute, appoint, and designate the Surety as their Attorney-in-Fact with full power, authority and right: 1) To exercise all of the rights of the Principal and Indemnitors which may be assigned or otherwise transferred to the Surety by the terms or operation of this Agreement; 2) To endorse checks or other instruments or securities on behalf of and in the name of the Principal and Indemnitors; and 3) In the name of the Principal and/or Indemnitors to make, execute, and deliver any and all instruments, documents, or papers (including but not limited to UCC filings and notices) deemed necessary by the Surety to give full effect to any or all of the rights, powers and protections intended to be given to the Surety under all of the provisions of this Agreement.

C. The Indemnitors each acknowledge and agree that: 1) The Surety shall have every power, right, remedy, or defense which a personal Surety with- out compensation would have, including but not limited to the right of exoneration and the right to seek or secure its discharge as a Surety; 2) The lia- bility of the Indemnitors shall be construed as broadly as the liability of a compensated Surety to an Obligee; 3) In protecting itself against any Loss, the Surety at its option shall be subrogated to all the powers, rights, remedies, and defenses of the Indemnitors; 4) The powers, rights, remedies, and defenses to which the Surety may be subrogated or which the Surety might otherwise have, acquire, exercise, and enforce shall not in any way be lim- ited or abridged by this Agreement nor by the acceptance of any payment for any Bond nor by any agreement to accept other security nor by the accep- tance of other security nor by the assent to any act of any Indemnitor or any person acting in behalf of an Indemnitor; nor shall this Agreement impose on the Surety any liability that it would not have had were this Agreement not executed; 5) Surety may take any action afforded to it by statute, the law, judicial process, or any other legal provision authorizing it to make itself whole from Loss; and 6) Surety's powers, rights and remedies, whether granted hereunder or by operation of law, shall be cumulative and none shall preclude or diminish any other, and Surety's proceeding in any manner shall not operate to waive its right to proceed in a different fashion or to use a different remedy at a later date or simultaneously.

D. With respect to any and all of the powers granted to the Surety by this Agreement, whether in this section or elsewhere, or by operation of law; 1) The Surety may appoint agents without consent of the Indemnitors, and may delegate to such agents or nominees any and all of the powers and author- ity of the Surety; and 2) The Indemnitors hereby EXPRESSLY WAIVE any and all right to claim against the Surety that the Surety in any way dam- aged the Indemnitors or any of them or any of their businesses by the fact that: (a) The Surety failed to exercise any or all of its powers, or failed to exercise any power to the fullest extent it might have; (b) The Surety's acts or omissions interfered with any contract of the Principal or damaged the reputation or financial condition of any Indemnitor or his business; or (c) The Surety's acts or omissions increased the liability of the Indemnitors here- under beyond what the Indemnitors or any of them might consider necessary or reasonable or beyond what any of them might have intended to assume; and the Indemnitors accordingly ratify and confirm all actions and courses of action taken by the Surety or its agents in good faith under the powers granted herein or otherwise and hereby release and discharge the Surety and its agents from any and all liability therefor.

**VI. JEOPARDY POWERS:** A. The Indemnitors hereby authorize and empower the Surety, at its option and in its sole discretion, to take any or all of the following actions upon the occurrence of a Jeopardy Event as defined in B below: 1) Liquidate and apply any or all of such funds or collateral as may be deposited with or in the possession of the Surety to the extent of the Surety's Losses; 2) Enforce the Security Interest granted by IV.A. above; 3) Take over any part or all of the work under any or all bonded contracts and complete or arrange for the completion of such work or elect any other option available under the Bond or by operation of law for discharging any performance obligation of the Surety; 4) Take possession of and/or utilize any or all of the items assigned to the Surety under IV.B. above; and 5) Immediately commence or intervene in any legal proceedings as deemed nec- essary or appropriate by the Surety to enforce this Agreement, including but not limited to proceedings to recover Losses from the Indemnitors or any of them or, to the extent the Surety is subrogated to any powers, rights, remedies, or defenses of the Indemnitors or any of them under IV.B above or by operation of law, proceedings to avoid or recover Losses to or from third parties.

B. A Jeopardy Event is any of the [illegible] any combination thereof: 1) Failure to pay premi[illegible] whe[illegible] 2) The occurrence of a Loss, as defined in II.A. and B. even though the Indemnitor [illegible] y dispute the alleged Item of Loss; 3) Any breach [illegible] is Agreement by the Indemnitors or any of them, including but not limited to any failure to comply with the demands and/or duties made or imposed under II.C, III, or IV. above; 4) With respect to any contract, whether bonded by the Surety or not, (a) a breach or delay, suspension, or cessation of work by the Principal, (b) a declaration of default, or intent to default, by any Obligee, owner, or other contracting authority, or (c) the filing of any liens or attested accounts against the Principal; 5) Any misuse, misapplication, assignment, or diversion from one contract to another, prior to the complete discharge of the Surety, of any of the items described in IV.B.1 above or of contract funds as defined in IV.B.3 above; or the occurrence of any event which deprives the Principal of the use of any of the items enumerated in IV.B.1; 6) The failure of the Indemnitors or any of them to pay bills or other indebtedness when due including but not limited to any failure to pay taxes or file returns therefore; 7) The lapse of any insurance coverage required under II.C.7; 8) The filing of any suit against the Indemnitors or any of them; 9) Any deterioration in the financial condition of any Indemnitor or any diminution in value of any collateral held by the Surety or of any property or assets in which the Surety has a Security Interest hereunder or the disposition by any Indemnitor of property or assets in violation of IV.A.1; 10) Any of the Indemnitors become subject to any agreement or proceeding of sale, levy, execution, composition, insolvency, bankruptcy, receivership, trusteeship, assignment for the benefit of creditors, dissolution, or liquidation; 11) Any Indemnitor or any officer or key person of the Principal dies, is adjudged incompetent, is convicted of a felony, becomes a fugitive from justice or disappears and cannot be located at any address or phone number given to the Surety; or 12) Any material change in the ownership or management of the Principal.

**VII. GENERAL PROVISIONS: A. WAIVER OF NOTICE.** The Indemnitors hereby waive notice of, among other things: (1) the acceptance of this Agreement; (2) the Issuance of Bonds; (3) any Jeopardy Event, or other act, event, or occurrence which might give rise to a Loss; (4) any information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities or the rights or liabilities of any or all of the Indemnitors; (5) any advance of funds to the Principal from the Surety; (6) any information about the Principal which comes to the notice or knowledge of the Surety, even though such information might materially increase the risk beyond that which the Indemnitors, or any of them, might have intended to assume, and even though the Surety may have reason to believe that such information is unknown to the Indemnitors and may have had a reasonable opportunity to communicate such information to the Indemnitors; as well as notice of any other act, occurrence, event, or fact to the end and effect that the Indemnitors shall be and continue liable hereunder notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been or be entitled to make or powers or rights they might have been or be entitled to exercise.

**B. WAIVER OF EXEMPTION FROM EXECUTION.** The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all right to any equity of redemption and all right to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale, or other legal process under the laws of any State, Territory, or Possession.

**C. REINSURANCE.** If the Surety procures any other company or companies to execute or to join with it in executing, co-insuring or reinsuring any Bonds for the Principal, then the terms and conditions of this Agreement shall apply to and operate for the benefit of such other company or companies, its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this Agreement, regardless of whether the Surety itself executes or retains any portion of the obligations of such Bonds. In such an event, the word "Surety", wherever used in this instrument, shall be construed to include such company or companies, as their respective interests may appear.

**D. INVALIDITY.** If any court holds that a portion of this Agreement is void or unenforceable, then that portion shall be considered deleted in that court's jurisdiction (but not in other jurisdictions). Such a holding, however, shall not vitiate the entire Agreement; and all other portions and provisions of this Agreement shall remain enforceable and shall endure in full force and effect.

**E. MODIFICATION.** This Agreement may not be changed or modified orally or by marking, erasing, or otherwise physically altering this instrument. No change or modification shall be effective unless specifically agreed in writing in an instrument which incorporates this Agreement by reference and which is executed by all necessary parties with the same formalities as this instrument.

**F. WARRANTIES.** The Indemnitors each acknowledge, represent and warrant, that: 1) This Agreement and any Bond Issued in consequence of this Agreement is for the special benefit of each and every Indemnitor and the special benefit and protection of the property of each and every Indemnitor, now owned or hereafter acquired, including any and all income, earnings, and increases therefrom; 2) Any Bond Issued in consequence of this Agreement is for business, and not personal, purposes in pursuing a business transaction; 3) Each and every Indemnitor is specially, substantially, and beneficially interested in any Bond Issued in consequence of this Agreement; and 4) All disclosures, whether oral or written, made to the Surety by the Indemnitors in connection with the execution of this Agreement or the Issuance of any Bonds are truthful and complete; and the Indemnitors have not failed to disclose any information which might be relevant to the Surety's decision to execute this Agreement or to Issue any Bonds.

**G. RULES OF CONSTRUCTION.** 1) This Agreement shall be governed and interpreted by the laws of the State of Ohio. 2) Wherever used in this Agreement, the words "Indemnitor" or "Indemnitors" always include the Principal; and as circumstances may require, the plural refers to the singular and vice-versa and the masculine gender refers to the feminine or neuter genders, as appropriate, and vice-versa.

**VIII. TERMINATION: A.** Any Indemnitor can terminate his liability under this Agreement with respect to future Bonds executed for the Principal (other than those described below in 1) by sending written notice via certified or registered mail to the Surety's home office indicating the Indemnitor's desire to terminate, and such termination shall become effective on the thirtieth day following the Surety's receipt of the Indemnitor's notice, provided however, that: 1) Termination shall not operate to modify, bar, discharge, limit, affect, or impair the Indemnitor's liability or the Surety's rights or powers under this Agreement, with respect to: (a) Bonds executed or authorized prior to the effective date of termination, and renewals, extensions, modifications and substitutions thereof; (b) Bonds executed pursuant to a bid Bond executed or authorized prior to the effective date of termination, and renewals, extensions, modifications and substitutions thereof; and (c) Any maintenance, warranty, or guarantee Bonds executed incidental to any other Bond executed prior to the effective date of termination, and renewals, extensions, and substitutions thereof; 2) Termination of one or any combination of Indemnitors shall not operate to modify, bar, discharge, limit, affect, or impair the obligations of any other Indemnitors who have not given notice to the Surety in the manner specified above.

B. The Indemnitors acknowledge that termination of any one of them may adversely affect the Surety's willingness to execute Bonds for the Principal or cause the Surety to deem itself insecure; and, therefore, the Indemnitors individually and collectively agree not to make any claim or bring any action or raise any defense against the Surety which is premised upon the termination of any Indemnitor or combination of Indemnitors.

**IX. SURETY DEFINED; INDEMNITORS' REPRESENTATIONS: A.** The word "Surety" as used herein shall mean any surety company or companies issuing Bond(s) in favor of the principal, including, but not limited to, Century Surety Company, Continental Heritage Insurance Company, Evergreen National Indemnity Company, Gulf Insurance Company and Select Insurance Company.

B. THE INDEMNITORS REPRESENT THAT THEY HAVE KNOWLEDGE THAT CSU, ACTING DIRECTLY OR INDIRECTLY THROUGH ITS AGENTS AND PRODUCERS, ACTING ON BEHALF OF VARIOUS SURETY COMPANIES THAT MAY ISSUE ONE OR MORE BONDS FOR THE BENEFIT, AND AT THE REQUEST OF THE PRINCIPAL; THAT THE SAID SURETY COMPANIES REQUIRE AND ARE RELYING UPON THE EXECUTION AND DELIVERY OF THIS AGREEMENT AS A CONDITION OF BONDING THE PRINCIPAL; THAT THIS AGREEMENT IS BEING GIVEN BY THE INDEMNITORS FOR THE BENEFIT OF ANY AND ALL SURETY COMPANIES PROCURED THROUGH CSU TO BOND THE PRINCIPAL. THE INDEMNITORS HEREBY WAIVE ANY AND ALL LEGAL OR EQUITABLE DEFENSES TO THE ENFORCEMENT OF THIS AGREEMENT BY ONE OR MORE OF THE SAID SURETIES FOR THE REASON THAT THE SAID SURETIES WERE NOT SPECIFICALLY NAMED IN THIS AGREEMENT. THE INDEMNITORS FURTHER REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

SIGNED, SEALED AND DATED as of this 24th day of May, 2000.

INSTRUCTIONS: Authorized Officer must sign. Attach Corporate resolution granting such authority to sign. All stockholders must sign as individual Indemnitors. If you are a Corporation, a Corporate Secretary should attest to President's signature.

**PRINCIPAL**

| Complete this block if you are a Corporation or a Partnership | Complete this block if you are an Individual/Sole Proprietorship |
|---|---|
| M.A.T. Marine, Inc. — Name of Principal (type or Print) | Name of Principal (type or Print) |
| By: [signature] — Signature | Signature |
| Title: Kathleen Hallam, President | Address: |
| By: [signature] — Signature | |
| Title: Pres. | Social Security Number: |
| Address: P.O. Box 974, Monument Beach, MA 02553 | |
| Taxpayer I.D. Number: 04-3087866 | |
| (AFFIX CORPORATE SEAL) | |

AE 6242155

MOH Leasing
Name of Corporation/Partnership (type or print)
By: *Kathleen Hallam* (Signature)
Title: Kathleen Hallam, President
By: ______ Signature
Title: ______
Address: P.O. Box 974
Monument Beach, MA 02553
Taxpayer I.D. Number: 04-3354022
(AFFIX CORPORATE SEAL)

______
Name of Corporation/Partnership (type or print)
By: ______ Signature
Title: ______
By: ______ Signature
Title: ______
Address: ______
Taxpayer I.D. Number: ______
(AFFIX CORPORATE SEAL)

State of *Massachusetts*
County of *Barnstable* } ss

On this *24th* day of *May* *2000*, before me personally appeared Kathleen Hallam, to me known, who being by me duly sworn, did depose and say that he resides in Bourne, MA, that he is the President of M.A.T. Marine, Inc., the corporation or partnership described in and which executed the foregoing instrument; that such execution was authorized by all necessary corporate or partnership action, as the case may be, and that he signed his name thereto by like order.
(AFFIX NOTARY SEAL)
*Katharine M. O'Neil* Notary Public — *11/05/04* Expiration Date

State of *Massachusetts*
County of *Barnstable* } ss

On this *24th* day of *May* *2000*, before me personally appeared Kathleen Hallam, to me known, who being by me duly sworn, did depose and say that he resides in Bourne, MA, that he is the President of MOH Leasing, the corporation or partnership described in and which executed the foregoing instrument; that such execution was authorized by all necessary corporate or partnership action, as the case may be, and that he signed his name thereto by like order.
(AFFIX NOTARY SEAL)
*Katharine M. O'Neil* Notary Public — *11/05/04* Expiration Date

State of *Massachusetts*
County of *Barnstable* } ss

On this *24th* day of *May* *2000*, before me personally appeared *Kathleen Hallam*, to me known, who being by me duly sworn, did depose and say that he resides in *Bourne, MA*, that he is the *President* of ______, the corporation or partnership described in and which executed the foregoing instrument; that such execution was authorized by all necessary corporate or partnership action, as the case may be, and that he signed his name thereto by like order.
(AFFIX NOTARY SEAL)
*Katharine M. O'Neil* Notary Public — *11/05/04* Expiration Date

Kathleen Hallam
Name (type or print)
*Kathleen Hallam* Signature
Address: 48 Monument Neck Road
Bourne, MA 02532
Social Security Number: 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

State of *Massachusetts*
County of *Barnstable* } ss
On this ___ day of ___ came Kathleen Hallam, before me personally to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same as his free and voluntary act.
(AFFIX NOTARY SEAL)
*Katharine M. O'Neil* Notary Public — *11/05/04* Expiration Date

Michael Hallam
Name (type or print)
*Michael Hallam* Signature
Address: 48 Monument Neck Road
Bourne, MA 02532
Social Security Number: 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

State of *Massachusetts*
County of *Barnstable* } ss
On this ___ day of ___ came Michael Hallam, before me personally to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same as his free and voluntary act.
(AFFIX NOTARY SEAL)
*Katharine M. O'Neil* Notary Public — *11/05/04* Expiration Date

______ Name (type or print)
______ Signature
Address: ______
Social Security Number: ______

State of ______
County of ______ } ss
On this ___ day of ___ came ___, before me personally to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same as his free and voluntary act.
(AFFIX NOTARY SEAL)
______ Notary Public ______ Expiration Date

______ Name (type or print)
______ Signature
Address: ______
Social Security Number: ______

State of ______
County of ______ } ss
On this ___ day of ___ came ___, before me personally to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same as his free and voluntary act.
(AFFIX NOTARY SEAL)
______ Notary Public ______ Expiration Date

______ Name (type or print)
______ Signature
Address: ______
Social Security Number: ______

State of ______
County of ______ } ss
On this ___ day of ___ came ___, before me personally to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same as his free and voluntary act.
(AFFIX NOTARY SEAL)
______ Notary Public ______ Expiration Date

*AE6262155*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Maurice Beaudoin PE
New Bedford Resident Office
Dept. of the Army
New England Dist. Corps of Engineers
103 Sawyer St.
New Bedford, MA 02746-2448

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) BEAUDOIN
B. Date of Delivery 5-7-04
C. Signature
X [signature]
☐ Agent
☒ Addressee
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt ~~for Merchandise~~
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Copy from service label)
7099 3400 0013 7716 9574

PS Form 3811, July 1999 Domestic Return Receipt 102595-00-M-0952

7099 3400 0013 7716 9574

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

| | | |
|---|---|---|
| Postage | $ | Postmark Here 4/23/04 |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

*Recipient's Name (Please Print Clearly) (to be completed by mailer)*
Maurice Beaudoin PE
*Street, Apt. No.; or PO Box No.*
103 Sawyer Rd
*City, State, ZIP+4*
New Bedford, MA 02746-2448

PS Form 3800, February 2000 See Reverse for Instructions

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP
10055 SWEET VALLEY DRIV
CLEVELAND, OH 44125

6-103/410

CHECK NO. 3500

Twenty Seven Thousand, Five Hundred and 00 / 100 Dollars

DATE 03/17/2004 AMOUNT $****27,500.00

PAY TO THE ORDER OF
Frederick [illegible] Martin, Trustee
450 Monroe Turnpike
Monroe, CT 06468

TWO SIGNATURES REQUIRED OVER $5000.00

AUTHORIZED SIGNATURE

MICRO-PRINT SIGNATURE SIGNATURE LINE - MAGNIFY TO VIEW

⑈003500⑈ ⑆041001039⑆ 359081050916⑈

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP

3504

Environmental Containment Systems, LLC

| Description | Invoice Amount | Net Amount |
|---|---|---|
| Sector Gates, New Bedford | 18,850.00 | 18,850.00 |

Bond #: AE6298190
Principal: M.A.T. Marine, Inc.
Type: Payment

CHECK NO.
3504

| 03/17/2004 | GNM-32709-984 | Totals: | 18,850.00 | 18,850.00 |
|---|---|---|---|---|

THIS DOCUMENT HAS A COLORED BACKGROUND AND INVISIBLE FLUORESCENT FIBERS - VIEW UNDER BLACK LIGHT

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP
10055 SWEET VALLEY DRIVE
CLEVELAND, OH 44125

KEY BANK
CLEVELAND, OHIO

6-103/410

3504

CHECK NO. 3504

Eighteen Thousand, Eight Hundred Fifty and 00 / 100 Dollars

DATE 03/17/2004

AMOUNT $******18,850.00

PAY TO THE ORDER OF
Environmental Containment Systems, LLC
P.O. Box 612
Old Saybrook, CT 06475

TWO SIGNATURES REQUIRED OVER $5000.00

AUTHORIZED SIGNATURE

MICRO-PRINT SIGNATURE SIGNATURE LINE - MAGNIFY TO VIEW

⑈003504⑈ ⑆041001039⑆ 359081050916⑈

**EXHIBIT 3**

RECEIVED - COP
MAR 2 9 2004

## ASSIGNMENT AND RELEASE

ENVIRONMENTAL CONTAINMENT SYSTEMS, LLC (hereinafter "ECS"), for and in consideration of the receipt of the sum of EIGHTEEN THOUSAND EIGHT HUNDRED FIFTY AND 00/100 DOLLARS ($18,850.00), has sold, and does hereby grant, assign and convey to Gulf Insurance Company, all of its rights, title and interest in and to any and all claims ECS has against M.A.T. Marine, Inc. and the United States of America (hereinafter "USA") for materials sold to, and/or labor or services performed for M.A.T. Marine, Inc. in connection with the work performed on the Sector Gate Repairs, New Bedford, Massachusetts Project (Gulf Insurance Company Bond Number AE6298190).

Further, for and in consideration of the sum of EIGHTEEN THOUSAND EIGHT HUNDRED FIFTY AND 00/100 DOLLARS ($18,850.00), delivered and paid to ECS by Gulf Insurance Company, as Surety for M.A.T. Marine, Inc. on the Sector Gate Repairs, New Bedford, Massachusetts Project under Gulf Insurance Company Bond Number AE6298190, the receipt and sufficiency of which is hereby acknowledged, ECS, does for itself, its officers, directors, employees, agents, successors and assigns, remise, release and forever discharge said Gulf Insurance Company, its officers, directors, employees, agents, successors and assigns, M.A.T. Marine, Inc., and the USA, of and from all, and any manner of action and actions, cause and causes of action, liens, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, including, but not limited to, all of its contract proceeds and retainages, now or hereafter held by the USA, which ECS ever had, now has, or which ECS can, shall or may have in connection with ECS'S sale and furnishing of materials, and/or labor, for the aforesaid project. As further inducement to Gulf Insurance Company for making payment, ECS hereby agrees that all guarantees and warranties required under the terms of the aforesaid contract(s), if any, pertaining to the work, labor and materials furnished by the undersigned on the Sector Gate Repairs, New Bedford, Massachusetts Project on account for which this payment is made shall remain in full force and effect in accordance with their terms, which, however, shall not be extended nor enlarged hereby.

IN WITNESS WHEREOF, I have hereunto set my hand to duplicate copies of the foregoing Assignment and Release this 23rd day of March, 2004.

ENVIRONMENTAL CONTAINMENT SYSTEMS, LLC

By: [signature]

Title: Sales Manager

COP CONTRACT OPERATIONS PLANNING, LLC
10055 S[illegible] Valley Drive - Valley View, Ohio [illegible]
(216) 447-0004 Fax (216) 447-0127

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP

5045

Sterling Equipment, Inc.

| Description | Invoice Amount | Net Amount |
| --- | --- | --- |
| Sector Gates, New Bedford | 17,000.00 | 17,000.00 |

Bond #: AE6298190
Principal: M.A.T. Marine, Inc.
Type: Payment

CHECK NO.
5045

| | | | | |
| --- | --- | --- | --- | --- |
| 04/11/2005 | GNM-42279-2018 | Totals: | 17,000.00 | 17,000.00 |

THIS DOCUMENT HAS A COLORED BACKGROUND AND INVISIBLE FLUORESCENT FIBERS - VIEW UNDER BLACK LIGHT

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP
10055 SWEET VALLEY DRIVE
CLEVELAND, OH 44125

KEY BANK
CLEVELAND, OHIO

6-103/410

CHECK NO. 5045

5045

Seventeen Thousand, and 00 / 100 Dollars

DATE 04/11/2005

AMOUNT $*****17,000.00

PAY TO THE ORDER OF Sterling Equipment, Inc.

TWO SIGNATURES REQUIRED OVER $5000.00

AUTHORIZED SIGNATURE

MICRO-PRINT SIGNATURE LINE - MAGNIFY TO VIEW

⑈005045⑈ ⑆041001039⑆ 359081050916⑈

# RELEASE, ASSIGNMENT, AND GUARANTEE

In consideration of **Seventeen Thousand Dollars ($17,000.00)** to **us** paid by **Gulf Insurance Company** ("Gulf"), Surety of **M.A.T. Marine, Inc.** ("MAT") , the receipt and sufficiency whereof is hereby acknowledged, **Sterling Equipment, Inc.** ("Sterling") hereby remises, releases and forever discharges the said **Gulf** and **its** agents, servants, attorneys, officers, employees, directors, shareholders, insurers, heirs, executors, administrators, successors and assigns from all debts, demands, actions, causes of action, suits, dues, sum and sums of money, accounts, reckonings, bonds, specialties, covenants, contracts, controversies, agreements, promises, doings, omissions, variances, damages, extents, executions and liabilities and any and all other claims of every kind, nature and description whatsoever, both in LAW and EQUITY, which against the said **Gulf, we, Sterling**, or **our** agents, servants, attorneys, officers, employees, directors, shareholders, insurers, heirs, executors, administrators, successors or assigns now have or ever had from the beginning of the world to this date which relate to: (a) any and all claims for payment for materials and/or labor supplied or sublet by **Sterling** for incorporation in a certain construction project designated as Repairs to Sector Gates (the "New Bedford Project"), for which **Gulf** issued Payment and Performance Bond Nos. AE6298190 on behalf of **MAT**, as Principal, and in favor of the U.S. Army Corps of Engineers, New Bedford, Massachusetts, as Bond Obligee; and/or (b) any and all claims by **Sterling** which were or could have been the subject matter of a certain federal action styled *Sterling Equipment, Inc. v. Gulf Insurance Company*, U.S.D.C. (Mass.), C.A. No. 05-10089-NMG.

In addition, **Sterling** further releases **MAT** from such claims to the extent of the payment herein before described.

Further, **Sterling** does now represent and warrant that **it** is entitled to receive payment in the sum of **Seventeen Thousand Dollars ($17,000.00)** for material and/or labor for which claims have been asserted against **MAT**. In further consideration of the payment made by **Gulf**, **Sterling** hereby releases any and all mechanic's liens that have been or might have been asserted in connection with **its** claims for payment on New Bedford Project and does hereby release and does hereby bargain, sell, transfer, convey and unconditionally assign to **Gulf** all of **its** right, title and interest in and to the claim(s) asserted against **MAT** on the New Bedford Project, to the extent of the payment herein before described.

As a further inducement to **Gulf** for making payment at this time, **Sterling** hereby agrees that all guarantees and warranties required under the terms of the aforesaid contracts, if any, pertaining to the work, labor and materials furnished by the undersigned on the New Bedford Project on account of which this payment is made shall remain in full force and effect in accordance with their terms, which, however, shall not be extended nor enlarged hereby.

In witness whereof, **Sterling Equipment, Inc.** has caused this Release, Assignment, and Guarantee to be executed this 11th day of April, 2005.

By: Norman B. Bourque, Jr.
Title: General Manager
Officer hereunto duly authorized

Subscribed and sworn to before me this 11th day of April, 2005.

Notary Public Norman A. Peloquin, II
My Commission Expires: Oct. 2, 2009

LM\gulf\MAT\release sterling

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP

5044

Global Remediation Services, Inc.

| Description | Invoice Amount | Net Amount |
|---|---|---|
| Sector Gates, New Bedford | 29,272.50 | 29,272.50 |

Bond #: AE6298190
Principal: M.A.T. Marine, Inc.
Type: Payment

CHECK NO.
5044

| | | | | |
|---|---|---|---|---|
| 04/11/2005 | GNM-42279-2018 | Totals: | 29,272.50 | 29,272.50 |

THIS DOCUMENT HAS A COLORED BACKGROUND AND INVISIBLE FLUORESCENT FIBERS - VIEW UNDER BLACK LIGHT

CONTRACT OPERATIONS PLANNING, INC.
FOR GULF INSURANCE GROUP
10055 SWEET VALLEY DRIVE
CLEVELAND, OH 44125

KEY BANK
CLEVELAND, OHIO

6-103/410

CHECK NO. 5044

5044

Twenty Nine Thousand, Two Hundred Seventy Two and 50 / 100 Dollars

DATE 04/11/2005

AMOUNT $******29,272.50

PAY TO THE ORDER OF
Global Remediation Services, Inc.
1 Westinghouse Plaza
Suite 4001
Boston, MA 02137

TWO SIGNATURES REQUIRED OVER $5000.00

AUTHORIZED SIGNATURE

MICRO-PRINT SIGNATURE LINE - MAGNIFY TO VIEW

⑈005044⑈ ⑆041001039⑆ 359081050916⑈

**ASSIGNMENT AND RELEASE**

Global Remediation Services, Inc.(hereinafter "Global"), for and in consideration of the receipt of the sum of Twenty Nine Thousand Two Hundred Seventy Two and 50/100 Dollars ($29,272.50), has sold, and does hereby grant, assign and convey to Gulf Insurance Company (hereinafter "Gulf") all of its rights, title and interest in and to any and all claims and liens Global has against MAT Marine, Inc. (hereinafter "MAT") and the U.S. Army Corps of Engineers (hereinafter "USACE") for materials sold to, and/or labor or services performed for MAT in connection with the work performed on the New Bedford-Fairhaven Hurricane Barrier DACW33-03-0006 NA (Gulf Bond Number AE 6298190).

Further, for and in consideration of the sum of Twenty Nine Thousand Two Hundred Seventy Two and 50/100 Dollars ($29,272.50), delivered and paid to Global by Gulf, as Surety for MAT on the New Bedford-Fairhaven Hurricane Barrier DACW33-03-0006 NA Project under Gulf Bond Number AE 6298190, the receipt and sufficiency of which is hereby acknowledged, Global, does for itself, its officers, directors, employees, agents, successors and assigns, remise, release and forever discharge said Gulf, its officers, directors, employees, agents, successors and assigns, and the USACE, of and from all, and any manner of action and actions, cause and causes of action, liens, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, including, but not limited to, all of its contract proceeds and retainages, now or hereafter held by the USACE, which Global ever had, now has, or which Global can, shall or may have in connection with Global's sale and furnishing of materials, and/or labor, for the aforesaid project. As further inducement to Gulf for making payment, Global hereby agrees that all guarantees and warranties required under the terms of the aforesaid contract(s), if any, pertaining to the work, labor and materials furnished by the undersigned on the New Bedford-Fairhaven Hurricane Barrier DACW33-03-0006 NA on account for which this payment is made shall remain in full force and effect in accordance with their terms, which, however, shall not be extended nor enlarged hereby.

IN WITNESS WHEREOF, I have hereunto set my hand to duplicate copies of the foregoing Assignment and Release this 21st day of April, 2005.

Global Remediation Services, Inc.

By: ______________________

Title: President

C:\Documents and Settings\Paul\Local Settings\Temporary Internet Files\Content.IE5\0T27ODA3\4-21-05 ASSIGNMENT AND RELEASE.doc