IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE TRAVELERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1252C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS AND OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 56 and 12(b)(6) of the United States Court of Federal Claims, defendant, the United States, respectfully requests the Court to deny plaintiff's motion for summary judgment and to dismiss the complaint because it fails to state a claim upon which relief can be granted. The plaintiff, Travelers Insurance Company ("Travelers"), is neither in privity with the Government nor is equitably subrogated to an entity which is in privity with the Government. In support of this motion, we rely upon the complaint and the following brief.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUE

Whether the plaintiff may bring its action against the United States since the plaintiff is not in privity with the Government and it is not equitably subrogated to a party in privity with the Government.

## STATEMENT OF FACTS

The Government does not dispute the statement of facts set forth in plaintiff's motion for summary judgment. See Motion at 2-3.

## SUMMARY OF ARGUMENT

A surety that paid subcontractors under a payment bond obligation is subrogated only to the rights of the subcontractors. Such a surety is, therefore, not in privity with the United States and cannot bring a claim against the United States under the Tucker Act.

## ARGUMENT

### A SURETY THAT HAS PERFORMED PURSUANT TO ITS PAYMENT BOND OBLIGATIONS CANNOT MAINTAIN AN ACTION AGAINST THE UNITED STATES FOR REIMBURSEMENT

### I. The Court Of Federal Claims Is A Court Of Limited Jurisdiction

The United States Court of Federal Claims is a Court of limited jurisdiction. See Inter-Coastal Xpress, Inc. v. United States, 296 F.3d 1357, 1365 (Fed. Cir. 2002). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976).

Congressional consent to suit must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; Insurance Company of the West v. United States, (“ICW”) 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court is generally found in the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is “founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.” 28 U.S.C.

§ 1491. In ICW, the United States Court of Appeals for the Federal Circuit held that the Tucker Act provides a waiver of the Government's sovereign immunity to be sued not only by those with whom it contracts directly but also by those who – by operation of law – "stand in the shoes" of its contractors. ICW, 243 F.3d at 1375.

II. There Is No Privity Between A Non-Takeover Surety And The United States

To establish jurisdiction in this Court based upon contract, a plaintiff must establish privity between it and the Government. National Leased Housing Assoc. v. United States, 105 F.3d 1423, 1435-47 (Fed. Cir. 1997). Therefore, a surety's right to sue must rest either upon a contract right of its own or the equitable doctrine of subrogation. Fidelity & Deposit Co. v. United States, 31 Fed. Cl. 540, 542-43 (1994). Travelers does not allege that it has any independent contractual rights with the United States. Therefore, if Travelers is in privity with the Government, it can only be as a result of the equitable doctrine of subrogation.

In ICW, the Federal Circuit expressly addressed – for the first time – the issue of "[w]hether the United States has waived sovereign immunity for the equitable subrogation claims of a surety." 243 F.3d at 1370. The court resolved this issue by holding that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d 1367, 1375.

Thus, in order to determine whether a surety who has paid the debts of another may bring suit against the United States, the Court must determine whether the surety has stepped into the shoes of a Government contractor, the party with whom the Government is in privity of contract. The Federal Circuit provided some guidance on this issue. It said, "We have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of

the defaulted contract." Insurance Co. of the West v. United States, 243 F.3d at 1370. In those circumstances, the "non-contractual doctrine of equitable subrogation" comes into play and is, in effect, an assignment of the contractor's rights by operation of law. See ICW, 243 F.3d at 1374-75; Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998). The Court also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added).

As a prerequisite then to jurisdiction under the Tucker Act, the facts must establish that the surety first "step[ped] into the shoes of a government contractor." Id. at 1375. However, with respect to a surety who performs only as to its obligations under a payment bond, the court stated that such a surety does not step into the shoes of a government contractor: "It is well-established that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." 243 F.3d at 1371 (emphasis added).[1]

This articulation of the law is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 332 U.S. 234 (1947), upon which the court of appeals relied, and in which the Supreme Court said,

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation.

---

[1] In ICW, both ICW and The Surety Association of America ("SAA"), as *amicus curiae*, filed motions to amend the Court's opinion. ICW argued that the above-quoted statement was "an inaccurate statement of the law" and that the Court surely did not "intend[] to question this long-standing jurisdiction over suits by payment bond sureties." The SAA argued that a payment bond surety was subrogated to the rights of the contractor and had standing to sue the United States. Both ICW and SAA asked the Court to strike the above-quoted statement. Without discussion, the Court denied the motions to amend.

> But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241 (emphasis added). Thus, where a surety, pursuant to a payment bond, pays subcontractors, it has the same rights as the subcontractors, and its recourse is the same as that of the subcontractors – it may bring suit against the prime contractor, not the United States. The surety cannot acquire by subrogation what the subcontractor, whose rights it claims, does not have. See Munsey Trust, 332 U.S. at 242.

The rationale for distinguishing between, on the one hand, performance bond or takeover sureties and, on the other, sureties that merely satisfy the payment obligations of the prime contractor, lies in the benefit derived by the Government from the acts of the surety. The purpose of a performance bond is “assure that the government has a completed project for the agreed contract price.” Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990) (citation omitted). Once the contract is complete, the Government's interest in assuring performance no longer requires the protection afforded by the bond. “When laborers and materialmen, however, are unpaid and the work is complete, the government suffers no damage.” Munsey Trust, 332 U.S. at 244. “By definition and agreement the surety protects the government’s interest, not the other way around.” Fireman’s Fund Ins. Co. v. United States, 909 F.2d 495, 499 (Fed. Cir. 1997).

In this case, Travelers stands in the shoes of the subcontractors, whose claims it paid. As such, it lacks privity with the United States, and its complaint fails to state a claim upon which relief can be granted.

The question, then, before this Court is whether ICW is correct — that is, whether a payment bond surety does not step into the shoes of the contractor and, therefore, has no

enforceable rights against the Government. In order to determine whether ICW correctly followed the Court's guidance in Munsey Trust, we begin our analysis with Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404 (1908), which first acknowledged the subrogation rights of a payment bond surety.

In Henningsen, a payment bond surety brought suit against a bank that loaned money to a Government contractor and received an assignment of the contract payments; the United States was not a party to the case. 208 U.S. at 404-05. The issue before the Court was "the respective equities of the parties." The Court easily resolved that contest, holding that the equities of the surety were "superior to that of one who simply loaned money to the contractor, to be by him used as he saw fit, either in the performance of his building contract or in any other way[.]" 208 U.S. at 410. Notably, however, the Court described the nature of the surety's performance as follows: "It paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supplymen were paid." Id. (emphasis added).

The Supreme Court had the opportunity to examine again the rights of a payment bond surety in Martin v. National Surety Co., 300 U.S. 588 (1937). In this case, a Government contractor again made an assignment of his contract payments to Martin, a creditor, which conflicted with the rights of the payment bond surety. Significantly, the Government had disbursed the funds to Martin. 300 U.S. at 591. The surety brought suit against Martin, the contractor, and the United States. 300 U.S. at 592. During litigation, the surety became insolvent and renounced all of its rights in the litigation in favor of the materialmen and laborers. 300 U.S. at 592. The trial court ruled in favor of the materialmen and laborers, and the court of appeals affirmed on the "broad ground" that "the proceeds of a building contract are chargeable

in favor of materialmen with an equitable lien, which attaches upon collection, even if not before," and cannot be overridden by the contractor's payment to other creditors. 300 U.S. at 593. Justice Cardozo, writing for a unanimous Court, affirmed the ruling on "narrower" grounds, holding that where a creditor, "with knowledge of the agreement between the contractor and the surety whereby such proceeds became a fund to be devoted in the first instance to the payment of materialmen and others similarly situated, . . . the equities in favor of materialmen growing out of that agreement were impressed upon the fund" received by the creditor, and the creditor's interests were subordinate to theirs. 300 U.S. at 593-94.

With respect to the Government's conduct in Martin, the Court noted that the Government, pursuant to the Anti-Assignment Act, 31 U.S.C. § 203, could have withheld the money from the creditor, but it "did not choose to shape its course accordingly. It turned over the money to Martin as [the contractor's] representative, thus discharging its indebtedness as effectively as if payment had been made directly to the principal. The case is to be viewed as if [the contractor] had received the warrant, had put the proceeds in his bank, and had paid them afterwards to Martin." 300 U.S. at 594. Thus, the fund could be distributed to the rival claimants, "with the Government discharged irrespective of the outcome." 300 U.S. at 595. This case is significant, for the Supreme Court concluded that, even though the creditor was not entitled to the funds, the surety's recourse was against the contractor and the creditor, not the United States. Its debt was discharged.

The rights of a payment bond surety came before the Court again in Munsey Trust Co. v. United States, 332 U.S. 234 (1947). This case was brought by the surety against the United States to recover the percentage of progress payments that were retained by the Government pursuant to its contract with the contractor. The Government asserted a right to the monies for a

set-off of an unrelated claim. In resolving this dispute, the Court recognized the importance of first determining "whose rights are being asserted and who claims them." 332 U.S. at 234. The surety claimed that it was subrogated to the rights of laborers and materialmen whom it paid and of the United States. 332 U.S. at 240.

With respect to the rights of the laborers and materialmen, the Court concluded: "If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation." 332 U.S. at 241. Further, "it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." 332 U.S. at 242. Thus, the surety, standing in the shoes of the laborers and materialmen, had no enforceable rights against the United States. See ICW, 243 F.3d at 1371.

The Court also addressed the claim that the surety was subrogated to the rights of the United States. Munsey Trust, 332 U.S. at 242. In the proceeding below, the Court of Claims found in favor of the surety, relying upon the premise that retained funds are held to assure that laborers and materialmen will be paid. Of this argument, the Court said, "It is hardly reasonable to withhold money in order to assure payments which perhaps can be made only from the money earned." 332 U.S. at 243. The Court further noted that it was "more likely" that the "only motive" for retaining the money was to ensure "completion of work on time." Id. It is critical to note that this is precisely the position argued by Travelers, the payment bond surety here. It argues that the Government is required to withhold funds from the contractor in order to assure payment to laborers, notwithstanding that payment can be made only if the contractor is paid for the work performed.

The Supreme Court in Munsey Trust flatly rejected this argument, stating:

> Respondent's contention then comes to this: that by requiring the contractor to furnish assurances that he will perform his obligations to laborers and materialmen, the government has deliberately decreased the ordinary safeguards it would have had to enforce the contractor's obligations to it. We see nothing in the words of the contract or the statute to lead us to this conclusion. On the contrary, the statutory provisions requiring a separate bond for payment of laborers and materialmen were enacted for their benefit, not to the detriment of the government. It is the surety who is required to take risk. We have no warrant to increase risks of the government.

332 U.S. at 243-44. As the Court correctly noted, when laborers and materialmen are unpaid and the work is complete, "the government suffers no damage . . . because it is under no legal obligation to pay the laborers and materialmen." 332 U.S. at 244.

Later, the Supreme Court again had occasion to resolve a dispute between a payment bond surety and the trustee in bankruptcy of a Government contractor in Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962). First, it cannot be argued that the Supreme Court in Pearlman held a payment bond surety had the right to sue the United States for payments that were made to a performing contractor. Second, nothing in Pearlman reveals an intent to overrule Munsey Trust, because there was no occasion to do so.

As an initial matter, the dispute in Pearlman was quite different from that presented by Travelers' claim. The dispute in Pearlman involved the competing equities between a payment bond surety and the trustee in bankruptcy of a Government contractor. The contract between the United States and the contractor was terminated, and another contractor completed the job. At that time, the Government was still holding over $87,000, "which plainly belonged to someone else." 371 U.S. at 134. The surety brought suit against the trustee, and the question before the Court was whether the surety had "ownership of, an equitable lien on, or a prior right to this fund

before bankruptcy adjudication." 371 U.S. at 136. The United States was not a party to the proceedings.

The Supreme Court began its analysis thus: "And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. at 136-37. Then, relying upon Prairie State Bank v. United States, 164 U.S. 227 (1896), involving a performance bond surety, and Henningsen, the Court held that the surety had a right to the retained fund. 371 U.S. at 139.

The Supreme Court then addressed the argument that Prairie Bank and Henningsen were overruled by Munsey Trust, and concluded that Prairie Bank and Henningsen were not disturbed. 371 U.S. at 140. In this context, the Supreme Court stated the following:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it.

371 U.S. at 141.[2]

Certain of these rights described by the Court, however, are plainly not subject to enforcement by a suit for money damages. It is without dispute that laborers and materialmen do not have a right to sue the United States to obtain progress payments or retained funds. "[N]othing is more clear than that laborers and materialmen do not have enforceable rights

---

[2] Interestingly, after setting forth these principles, the Court observed that "Mr. Justice Cardozo, speaking for this Court, reached a similar result in Martin v. National Sur. Co., 300 U.S. 588, 597-598, 57 S. Ct. 531, 535, 81 L. Ed. 822 (1937)," which concluded that the Government had discharged its obligations by paying contract funds to the contractor's assignee. Pearlman, 371 U.S. at 142 n.23.

against the United States for their compensation." Munsey Trust, 332 U.S. at 241; see also Department of the Army v. Blue Fox, 525 U.S. 255, 263(1999) (subcontractor cannot collect directly from the Army by asserting an equitable lien on funds held by the Army); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1550 (Fed. Cir. 1983) (a subcontractor may not recover directly from the United States for amounts owed to it by the prime). Therefore, to the extent that the Supreme Court in Pearlman said that "the laborers and materialmen had a right to be paid out of the fund," it clearly was not holding that the Government had waived its sovereign immunity to enable laborers and materialmen to recover directly from the United States. Furthermore, in those cases in which sureties may be entitled to the benefit of the rights of laborers and materialmen, they cannot acquire by subrogation rights that laborers and materialmen do not possess.

Thus, it cannot be maintained that Pearlman gave payment bond sureties a right against the United States for indemnification. As the Court noted at the outset of its opinion, it was called upon only to determine whether the surety had a "legal or equitable" interest in retained funds that was prior to the right of the bankruptcy trustee. 371 U.S. at 136.

"There are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Pearlman, 371 U.S. at 136-37 (emphasis added). Travelers paid the subcontractors; it is entitled to all of the subcontractors' rights to enforce its right to be reimbursed, but those rights do not include the right to sue the United States. As in Martin and Pearlman, the surety's claim is against the contractor, not the United States.

The payment bond surety does not step into the shoes of the contractor with enforceable rights against the United States, and no case that is binding upon this Court so holds.

III. <u>The United States Did Not Owe Any Duties To The Plaintiff</u>

The gist of Travelers' complaint is that the Government had a duty to Travelers' which included the duty to withhold funds from MAT. <u>See</u> Pl. Motion at 5-6. Given the unambiguous language in <u>ICW</u>, Travelers cannot claim that the Government had any duties owed to Travelers because it is not in privity with the United States, nor is it equitably subrogated to such a party.

Travelers' claim relies upon <u>Newark Insurance Co. v. United States</u>, 144 Ct. Cl. 655, 169 F. Supp. 955, 957 (1959), and <u>Balboa Ins. Co. v. United States</u>, 775 F.2d 1158 (Fed. Cir. 1985), and their progeny, in which the Court previously held that the Government acts as a stakeholder with respect to unpaid contract funds once notified by the surety of possible default by the contractor. In light of the Federal Circuit's rationale in <u>ICW</u>, such stakeholder duties cannot survive with respect to a claim by a payment bond surety. Travelers is subrogated only to the rights of the subcontractors it paid pursuant to its payment bond obligations. In <u>ICW</u>, the Court reviewed the common law rights of an assignee with respect to contract rights: "[T]he assignee of a claim stepped into the shoes of the assignor for all purposes: 'an assignment transfers to the assignee the same right held by the assignor, with its advantages and disadvantages.'" 243 F.3d at 1374 (citing Restatement (Second) of Contracts at § 340 cmt. a). It concluded that the doctrine of sovereign immunity did not change the common law, which allowed assignees to step into the shoes of the assignor. <u>Id</u>. Based upon this analysis, the Court held that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." <u>Id.</u> at 1375. This waiver of sovereign immunity, however, is limited. "The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted." <u>Globe Indem. Co. v. United States</u>, 84 Ct. Cl. 587, 595 (1937). Thus, because a

subcontractor cannot bring a claim against the United States, neither can the one who stands in the shoes of the subcontractor.

CONCLUSION

For the reasons set forth above, this Court should deny plaintiff's motion for summary judgment and dismiss plaintiff's complaint pursuant to Rule 12(b)(6).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

April 10, 2006