No. 05-1252C
(Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE TRAVLERS INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Robert G. Barbour, Esquire
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
8405 Greensboro Drive
Suite 100
McLean, VA 22102

Attorney for Plaintiff

April 26, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS .......... 1

PLAINTIFF'S BRIEF .......... 2

STATEMENT OF THE QUESTION INVOLVED .......... 2

ARGUMENT .......... 2

I. Introduction .......... 2

II. The Government's Motion to Dismiss Must be Denied .......... 4

III. Gulf's Motion for Summary Judgment Should be Granted .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## CASES

Ins. Co. of the W. v. United States, 1999 U.S. Claims LEXIS 313 (Fed. Cl. Dec. 10, 1999) ........................................ 3

Ins. Co. of the W. v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ........................ *passim*

Ins. Co. of the W. v. United States, 55 Fed. Cl. 529 (2003) ........................................ *passim*

Liberty Mut. Ins. Co. v. United States, 2006 WL 465845 (Fed. Cl. Feb. 27, 2006)........................................ 4, 8

Nova Cas. Co. v. United States, 69 Fed. Cl. 284 (2006) ................................ 4, 7, 8

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1491 ........................................ 8

RCFC 12 ........................................ 1

RCFC 56 ........................................ 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE TRAVELERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-1252C** |
| | ) | |
| **THE UNITED STATES,** | ) | **(Judge Lettow)** |
| | ) | |
| **Defendant.** | ) | |

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND <u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Pursuant to the Court's February 12, 2006 Order and Rules 56 and 12 of the United States Court of Federal Claims ("RCFC"), Plaintiff, The Travelers Insurance Company, successor in interest by merger to Gulf Insurance Company ("Gulf"), submits this reply to Defendant's opposition to Plaintiff's motion for summary judgment and opposition to Defendant's motion to dismiss. Gulf respectfully requests that the Court deny Defendant's motion and enter summary judgment in Gulf's favor on its Complaint on the grounds that there is no genuine issue as to any material fact and Gulf is entitled to judgment as a matter of law. In support of its opposition to Defendant's motion and its own motion for summary judgment, Gulf relies upon the pleadings, the parties' Joint Stipulation of Material Facts and the following Brief.

# PLAINTIFF'S BRIEF

## STATEMENT OF THE QUESTIONS INVOLVED

1. Whether a surety that discharges the debts of a Government contractor by making payments to subcontractors pursuant to obligations under a payment bond is equitably subrogated to the rights of the defaulting contractor such that it may pursue a direct claim against the Government for funds that it alleges were wrongfully distributed to the defaulting contractor?

2. Whether Plaintiff, as a matter of law, is entitled to recover payments wrongfully distributed by the Government to a defaulting contractor after the Government received notice from Plaintiff of the contractor's default and became a stakeholder in the contract funds?

## ARGUMENT

### I. Introduction

The Government moves this Court to dismiss Gulf's Complaint on grounds relating to this Court's jurisdiction and the scope of congressional consent to waiver of the Government's traditional immunity to suit. Specifically, the Government asserts that the Tucker Act's consent to suit in this Court, which the Government acknowledges extends to both Government contractors and those who "stand in the shoes" of Government contractors, does not extend so far as to include a surety that discharges the debt of a Government contractor by making payments to subcontractors or suppliers pursuant to obligations under a payment bond.

The Government bases its motion upon its reading of Insurance Co. of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ("West II"),[1] an opinion by the United States Court of Appeals for the Federal Circuit involving similar facts to those presented in this dispute. That decision, so the Government asserts, strictly limits the circumstances in which a surety may succeed to the rights of a contractor (*i.e.*, "stand in its shoes") to those where the surety takes over and completes a contract or finances completion of a contract pursuant to its obligations under a performance bond. Relying upon language included within *dicta* from that decision, the Government argues that a payment bond surety's equitable subrogation rights are limited to those rights possessed by the subcontractors and suppliers it pays and that such a surety does not step into the shoes of the contractor. Such a surety, the Government's argument continues, has no enforceable rights against the Government. Because Gulf's payments were made to M.A.T.'s subcontractors and suppliers pursuant to a payment bond, the Government asserts that Gulf has no valid equitable subrogation claim against the Government and, as such, this Court lacks jurisdiction over Gulf's claim.

The Government's argument, however, conveniently overlooks this Court's statements regarding the West II decision and, specifically, this Court's discussions and holdings regarding the scope of a payment bond surety's equitable subrogation rights. Moreover, the Government ignores this Court's holdings regarding the very language in the West II decision on which the Government's argument so heavily relies. In that regard, following the remand of the West II case, this Court in Insurance Co. of the West v. United States, 55 Fed. Cl. 529 (2003) ("West

[1] West II involved a plaintiff insurance company that, as a performance and payment bond surety, filed suit against the Government for wrongful payment of contract funds in the Court of Federal Claims. The Government moved to dismiss the claim for lack of subject matter jurisdiction, arguing that the Court of Federal Claims lacked jurisdiction over equitable subrogation claims of a surety against the Government. Ins. Co. of the W. v. United States, 1999 U.S. Claims LEXIS 313, at *2-3 (Fed. Cl. Dec. 10, 1999). The Court of Federal Claims denied the Government's motion to dismiss, but certified for interlocutory appeal the question of whether the Government has waived sovereign immunity for the equitable subrogation claims of a surety against the Government. Id. at *3-4.

III"), specifically addressed, analyzed and rejected the very argument on which the Government's motion in this case is premised. In two subsequent cases, Nova Casualty Co. v. United States, 69 Fed. Cl. 284 (2006), and Liberty Mutual Insurance Co. v. United States, 2006 WL 465845 (Fed. Cl. 2006),[2] this Court again rejected the Government's interpretation of the *dicta* from West II. Nova, 69 Fed. Cl. at 295 (describing the quoted language from West II as an "incomplete" statement of the law and holding that a surety is subrogated to the rights of the party whose debts it has satisfied, namely the contractor); Liberty, 2006 WL 465845, at *6 (holding that the Government's interpretation of the quoted language from West II "cannot stand because the rule of *stare decisis* binds the court to the rule of equitable subrogation already established by Supreme Court cases ... [that] a payment bond surety is subrogated to the rights of the insured prime contractor"). For all the reasons discussed in detail below, the Government's motion to dismiss should be denied and summary judgment should be entered in favor of Gulf.

II. The Government's Motion to Dismiss Must Be Denied

The Government's assertion that this Court lacks jurisdiction over Gulf's claim is premised upon its argument that Gulf, as a surety acting solely pursuant to its obligations under the Payment Bond issued for the Project, "does not step into the shoes of the contractor with enforceable rights against the United States...." (Def.'s Br. at 11.) At its heart, the Government's argument is based upon language in the Federal Circuit's decision in West II and, specifically, its reference in *dicta*[3] to the:

---

[2] The Court of Federal Claims' decisions in Nova and Liberty provide detailed analyses of Supreme Court and Federal Circuit precedent on the issues of equitable subrogation and the rights of a payment bond surety to be subrogated to the rights of the contractor whose debt it satisfies. Nova, 69 Fed. Cl. at 292-96; Liberty, 2006 WL 465845, at *7-12. Gulf incorporates those discussions into its argument.

[3] In its decision in West III, this Court specifically held that the quoted language "was not central to the West II court's holding and may be viewed properly as dicta." West III, 55 Fed. Cl. at 535. This Court went on to highlight a caution from the Federal Circuit that *dicta* in its decisions "should be read in the light of the court's central holding

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

(Def.'s Br. at 4 (emphasis in Brief but not original) (citing West II, 243 F.3d at 1371).) The Court of Federal Claims, however, has on at least three occasions specifically addressed and *rejected* the Government's argument based upon the language in question. First, the proceedings that followed remand of the West II case, the Defendant (also the Government) filed a motion remarkably similar to its pending motion in this case seeking dismissal of the surety's case on jurisdictional grounds. The Government based its motion upon, *inter alia*, this very language from the West II opinion. See generally, West III, 55 Fed. Cl. at 530-31. Specifically, the Government argued that the language from West II limits payment bond sureties to asserting only the rights that subcontractors, and not contractors, have against the Government. Id. at 534. The Court denied the Government's motion in its entirety and, with specific regard to the West II language held that "[w]hile the law is settled that subcontractors lack standing to sue the Government directly, this court respectfully must conclude that the dicta in West II -- stating that a surety steps into the shoes of a subcontractor, and not the contractor for which it issued bonds -- are not supported by precedent." West III, 55 Fed. Cl. at 535.

In reaching that conclusion, the Court first examined the case cited by the West II Court in support of its statement that sureties are subrogated only to the rights of paid subcontractors, United States v. Munsey Trust Co., 332 U.S. 234 (1947). As an initial finding, the Court noted that nothing in either Munsey or Pearlman v. Reliance Insurance Co., 371 U.S. 132 (1962), a case revisiting the Munsey opinion, "restricted sureties to invoking the rights of subcontractors only." West III, 55 Fed. Cl. at 537. In fact, as the Court wrote, "the Court in Pearlman framed

and the controlling fact in that case." Id. (citing F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1479 (Fed. Cir. 1983)).

the doctrine of equitable subrogation as allowing the surety to enforce the rights of a party whose debts the surety discharged." Id.

The Court next highlighted a series of cases decided after Pearlman in which its predecessor, the Court of Claims, expressly recognized the right of a surety to subrogate to the position of a defaulting contractor. West III, 55 Fed. Cl. at 537-38 (citing *inter alia*, Fireman's Fund Ins. Co. v. United States, 421 F.2d 706, 708 (Ct. Cl. 1970); Home Indem. Co. v. United States, 376 F.2d 890, 893 (Ct. Cl. 1967); United Pac. Ins. Co. v. United States, 319 F.2d 893, 895 (Ct. Cl. 1963); United States Fid. & Guar. Co. v. United States, 475 F.2d 1377, 1382 (Ct. Cl. 1973); United Elec. Corp. v. United States, 647 F.2d 1082, 1086 (Ct. Cl. 1981)). In connection with its analysis, the West III Court noted that the Court of Claims "recognized that a surety, after paying off any outstanding claims by subcontractors, becomes subrogated to the rights of the contractor and the subcontractors; because the subcontractors have no standing to sue the United States directly, the surety must, and can, stand in the shoes of the contractor to bring its action." West III, 55 Fed. Cl. at 537.

Finally, this Court returned its analysis to the decisions of the Federal Circuit, noting that after Munsey and Pearlman the Federal Circuit had specifically affirmed the right of a surety to step into the shoes of the contractor. West III, 55 Fed. Cl. at 538 (citing Transamerica Ins. Co. v. United States, 989 F.2d 1188, 1193 (Fed. Cir. 1993); Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998)).

The West III Court concluded its analysis as follows:

> Read against the foregoing precedent, the dicta in West II do not define the scope of a surety's rights under the doctrine of equitable subrogation. *When a surety, after financing or completing the performance of a defaulted contractor, discharges the outstanding claims of the subcontractors, it may subrogate to the rights of both the defaulted contractor and the subcontractors.* Because the

> subcontractors have no standing to sue the Government directly, the surety must invoke the contractor's right to sue in order to sustain its claim against the Government. If a surety were limited to exercising the rights of only the subcontractors under the doctrine of equitable subrogation, the surety would never be able to recover directly from the contracting agency. Such a result would contradict a century of jurisprudence on equitable subrogation.

Id. (emphasis added; citations omitted).

The Court of Federal Claims next addressed this jurisdictional issue in Nova Casualty Co. v. United States, 69 Fed. Cl. 284 (2006). In Nova, the Government again argued that a payment bond surety was not subrogated to the rights of a general contractor whose debts it had satisfied and, therefore, could not establish the Court's subject matter jurisdiction over its claims against the Government. After analyzing a line of Supreme Court cases stretching back over 100 years and detailing the rights of sureties to assert equitable subrogation against the Government, the Court concluded:

> Accordingly, *a surety that performs under a payment bond is subrogated to the rights of both the party who owed the debt, the contractor, and the party to whom the debt was owed, the subcontractor.* Such a surety is thus entitled to any funds retained by the government under the contract, but only after the government has satisfied any claims it might possess as a superior creditor. *A surety in this position may invoke the Tucker Act as a jurisdictional predicate for suit against the government because it stands in the shoes of the contractor for that purpose.*

Nova, 69 Fed. Cl. at 293-94 (emphasis added). With specific regard to the Federal Circuit, whose cases are binding on this Court, the Nova Court acknowledged that the "law within the Federal Circuit has long recognized the dual nature of a payment-bond surety's equitable subrogation to the contractor whose obligation it has satisfied as well as to the subcontractors whom it has paid." Id. at 295 (citing Balboa Ins. Co. v. United States, 775 F.2d 1158, 1161 (Fed. Cir. 1985); United Electric, 647 F.2d at 1086; United States Fid. & Guar., 475 F.2d at 1382).

Most recently, in Liberty Mutual Insurance Co. v. United States, 2006 WL 465845 (Fed. Cl. 2006), the Court of Federal Claims addressed the Government's jurisdictional argument that a payment bond surety is subrogated only to the rights of the subcontractors it paid, and not those of the prime contractor. After providing a detailed analysis of Supreme Court and Federal Circuit cases regarding equitable subrogation, the Court focused in on the very language from West II on which the Government in this case premises its argument. The Court wrote:

> The chief problem, of course, is that the court's statement, taken literally, is facially inconsistent with the Supreme Court's holding on the scope of suretyship law in Pearlman. Moreover, the statement is inconsistent with the court's conclusion in the very same opinion that its earlier Balboa decision correctly stated the law of equitable subrogation. Of course, the Federal Circuit and this court are bound by the Supreme Court precedent in Pearlman, and the rule of Balboa is binding on this court unless and until it is revisited and changed by either a supervening Supreme Court decision directly on point or an en banc panel of the Federal Circuit that addresses the issue. Neither is the case here.

Liberty, 2006 WL 65845, at *16 (citations omitted). The Court went on to hold, consistent with binding Supreme Court and Federal Circuit precedent, that "a surety that honors a Miller Act payment bond is subrogated *both* to the rights of the subcontractors or materialmen to whom it makes payment *as well as* the prime contractor on whose behalf such payments are made." Id.

When Gulf discharged M.A.T.'s debts by making payments to subcontractors and suppliers pursuant to its obligations under the Payment Bond, Gulf became equitably subrogated to the rights of both those subcontractors and suppliers and M.A.T. As such, Gulf may rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the Government in this Court. See Liberty, 2006 WL 465845, at *6; Nova, 69 Fed. Cl. at 294. On this basis, the Government's motion to dismiss based upon lack of jurisdiction must be denied.

## III. Gulf's Motion for Summary Judgment Should be Granted

In its motion for summary judgment, Gulf established the factual predicates for its claim that the Government made wrongful disbursements to M.A.T. totaling $32,718.99. Specificallly, Gulf established that: 1) Gulf provided the Government with notice of Gulf's interest in remaining contract balances (Motion at 2, Joint Stip. ¶ 4); 2) the Government was a stakeholder in the remaining contract funds (Motion at 5-6, Joint Stip. ¶¶ 4, 5, 6, 7); and 3) the Government made improper payments totaling $32,718.99 to M.A.T. after receiving Gulf's notice and after the Contract was completed and accepted (Motion at 6, Joint Stip. ¶ 7). Similarly, Gulf established the threshold requirement for asserting equitable subrogation under a payment bond. In that regard, Gulf established that it satisfied each of the three claims made against its payment bond in exchange for a full and final release. (Motion at 3, Joint Stip. ¶ 8.) The Government's Brief in opposition to Gulf's motion does not dispute any of the factual assertions set forth in Gulf's motion. (Def.'s Br. at. 1.)

Instead, the Government argues only that the Court lacks jurisdiction over Gulf's claim and that Gulf has no right to sue the Government under the doctrine of equitable subrogation. As discussed above, binding Supreme Court and Federal Circuit precedent show the Government's position on equitable subrogation to be untenable, and at least three decisions from the Court of Federal Claims have analyzed the Government's argument and found it to be without merit. Because there are no material disputes as to any of the facts establishing the Government's status as a stakeholder or the Government's breach of its stakeholder duties, and because there are no material disputes regarding Gulf's ability to invoke the doctrine of equitable subrogation, Gulf is entitled to judgment on its claim as a matter of law.

CONCLUSION

For the reasons set forth above, Gulf respectfully requests that this Court deny the Government's motion to dismiss and grant Gulf's motion for summary judgment.

Respectfully submitted,

*/s Robert G. Barbour*
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
8405 Greensboro Drive
Suite 100
McLean, VA 22102
(703) 749-1000

Attorney for Plaintiff

April 26, 2006

CERTIFICATE OF FILING

I hereby certify that on this 26th day of April 2006, a copy of REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s Robert G. Barbour

Doris S. Finnerman, Attorney
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530