IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE TRAVELERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1252C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

I. A Payment Bond Surety Does Not Step Into The Shoes Of A Government Contractor And Has No Enforceable Rights Against The Government

In our motion to dismiss, brief we demonstrated that the United States Court of Appeals for the Federal Circuit was correct when it said, "It is well-established that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." Insurance Company of the West v. United States ("ICW"), 243 F.3d 1367, 1371 (Fed. Cir. 2001). The plaintiff, Travelers Insurance Company ("Travelers"), contends that the Court should reach the same conclusion as that reached in three recent decisions of this Court – that the Federal Circuit erred and, further, that a surety which discharges a contractor's obligation to pay subcontractors stands in the shoes of the contractor and has enforceable rights against the Government for wrongful payment of contract funds.[1] At bottom, the plaintiff – and the decisions upon which it relies – contends that Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962), allows a payment bond surety to step into the shoes of

[1] The plaintiff relies upon Insurance Company of the West, 55 Fed. Cl. 529 (2003) (ICW II), the decision following the remand ordered in ICW, Nova Casualty Co. v. United States, 69 Fed. Cl. 284 (2006), and Liberty Mutual Insurance Co. v. United States, 70 Fed. Cl. 37 (2006).

the contractor. With all due respect to the Court, we disagree with this interpretation of Pearlman.

In accordance with the rationale employed by the Federal Circuit in ICW, a surety seeking to bring a contract claim against the Government must establish that it has "step[ped] into the shoes of a government contractor." ICW, 243 F.3d at 1375. Therefore, plaintiff must establish that a surety which has performed pursuant to a payment bond steps into the contractor's shoes.

In the first payment bond case considered by the Supreme Court, Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404 (1908), the Court indicated that, in order for the surety to succeed against a bank (whose rights derive from an assignment from the contractor), the surety must be subrogated to the rights of the United States. 208 U.S. at 410. In its analysis, the Court in Henningsen heavily relied upon its analysis in Prairie State Bank v. United States, 164 U.S. 227 (1896), which resolved the competing claims of a bank and a performance bond surety. In Prairie State, the Court rejected the surety's claim to the extent it claimed subrogation to the rights of the contractor. "A great deal of confusion has arisen in the case by treating [the surety] as subrogated merely 'in the rights of [the contractor]' in the fund, which, in effect, was saying that he was subrogated to no rights whatever." 164 U.S. at 232. In particular, the contractor had no right to the contract funds because it had defaulted in the performance of the contractor, and the surety assumed completion of the contract. 164 U.S. at 229.

The Court continued: "[The surety]'s right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) was capable of asserting against its debtor, [the contractor]." Accordingly, the surety had the right "to be substituted to the rights which the United States might have asserted against the

[contract] fund." 164 U.S. at 232.

In Pearlman, the Supreme Court was confronted with a much different conflict, the competing claims of a payment bond surety and the trustee in bankruptcy of a Government contractor. Relying upon Prairie State and Henningsen, the Court held that, unless the law had been subsequently changed, the surety had a right to the retained fund. 371 U.S. at 139.

The Supreme Court then addressed the whether Prairie Bank and Henningsen were overruled by Munsey Trust Co. v. United States, 332 U.S. 234 (1947), and it concluded that Prairie Bank and Henningsen were undisturbed. 371 U.S. at 140. In this context, the Supreme Court stated the following:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it.

371 U.S. at 141. The question, then, is whether the Supreme Court in Pearlman, by this statement, expanded the payment bond surety's rights to include a right to be subrogated to the contractor. It did not.

First, it is undisputed that a subrogee "cannot acquire by subrogation what another whose rights he claims did not have." United States v. Munsey Trust Co., 332 U.S. 234, 242 (1947); see National City Bank v. United States, 143 Ct. Cl. 154, 163 F. Supp. 846, 852 (1958) ("It is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor"). In Pearlman, the contractor was not entitled to the fund. 371 U.S. at 141 ("the contractor, had he completed his job and paid his

laborers and materialmen, would have become entitled to the fund"). Thus, as in Prairie State and Henningsen, the surety's claim, to be successful, could not rest upon the rights of the contractor because the contractor did not have a right to the retained fund.

Second, it bears repeating that the contest in Pearlman was between the surety and contractor's estate in bankruptcy. The doctrine of subrogation provides that a surety, who satisfies an obligation to a creditor on behalf of the principle-debtor, "is entitled to recover from the principal the amount it has laid out." In re Farley Inc., 236 F.3d 359, 361 (7th Cir. 2000). The surety's remedy, then, is a suit for reimbursement from the principal-debtor. See United States Fidelity & Guaranty Co. v. Sandoval, 223 U.S. 227 (1912); Hall v. Smith, 46 U.S. 96 (1847); Hadden v. Chambers, 2 U.S. 236 (1795); Union Switch & Signal, Inc. v. St. Paul Fire and Marine Ins. Co., 226 F.R.D. 485, 488 (S.D.N.Y. 2005) ("In the absence of contractual language to the contrary, principals are ordinarily obligated to indemnify their sureties for any of their obligations that are paid by the surety"). The Supreme Court in Pearlman, in proclaiming that the surety was entitled to the contractor's right to the contract fund "to the extent necessary to reimburse it," went no further than to recognize the surety's well-established common-law right of indemnification and reimbursement from the principal. This right established the surety's priority over the contractor to the contract funds.

Third, immediately following the statement in question, the Supreme Court noted that "[o]ur result has also been reached by the Court of Claims in cases substantially like ours," citing Continental Casualty Co. v. United States, 145 Ct. Cl. 99, 169 F. Supp. 945 (1959); National Surety Corp. v. United States, 132 Ct. Cl. 724, 133 F. Supp. 381(1955); and Royal Indemnity Co. v. United States, 117 Ct. Cl. 736, 93 F.Supp. 891 (1950). In Continental Casualty, the contest was again between a payment bond surety and the trustee of the bankrupt contractor's

estate. In analyzing the surety's rights, the Court said,

> When, therefore, the plaintiff surety paid Pennsylvania Drydock's laborers and materialmen, it was satisfying two obligations of the contractor, one to its laborers and materialmen who were general creditors, the other to the United States which was a preferred creditor because of its possession of funds which could be used as an offset against the contractor. By satisfying the latter obligation, the plaintiff surety became entitled to be subrogated to the security which the United States held, i.e., the funds in its hands.

169 F. Supp. at 947. The Court, thus, followed the well-established proposition that a surety stands in the shoes of the creditor whose claim it has paid. See United States v. California, 507 U.S. 746,756 (1993) (quoting Munsey Trust, 332 U.S. at 242). The surety stood in the shoes of the laborers and materialmen and in the shoes of the United States, which had a right to the contract funds. The Court did not hold that the surety stood in the shoes of the contractor to assert a claim against the United States. Similarly, in National Surety v. United States, 132 Ct. Cl. 724, 133 F. Supp. 381 (1955), the Court of Claims held that a payment bond surety, upon performance of its obligation, "is subrogated to the right of the United States to apply this money to the payment of laborers and materialmen, in the discharge of its equitable obligation." 133 F. Supp. at 384.

The Court of Claims in Royal Indemnity took a slightly different approach. There, the Court attempted to interpret and apply the decision in Henningsen. It concluded: "[W]e think the necessary effect of the decision is to hold that the laborers and materialmen, in spite of or in addition to the giving of the bond, had an original and continuing equitable priority in the fund, and that it was this right to which the surety was subrogated." 93 F. Supp. at 897. Again, the Court did not find that the surety was subrogated to the contractor's right, if, for no other reason, than the contractor had "no rights whatever." Prairie State, 164 U.S. at 232.

Fourth, the Court should look to the concurring opinion in Pearlman in order to properly assess the scope of the statement in question. The concurring opinion noted that, in Prairie State and Henningson, the Court held "that the surety who pays laborers' and materialmen's claims stand in the shoes of the United States and is entitled to surplus funds remaining in its hands after the contract is completed." 371 U.S. at 143. What the concurring opinion objected to was the majority's holding that the surety was also "subrogated to the claims of the laborers and materialmen which it has paid." 371 U.S. at 142. As the concurring opinion noted, "Since the laborers and materialmen have no right against the funds, it follows as clear as rain that the surety could have none." Id. What is notable, however, is that the concurring opinion does not read the majority opinion as holding that the surety stands in the shoes of the contractor. Accordingly, it is error to conclude that Pearlman holds that a payment bond surety is subrogated to the rights of the contractor.[2]

Similarly, we respectfully disagree with this Court's conclusion that United States Fidelity & Guaranty Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377, 1382 (1973) ("USF&G"), "gave effect to Pearlman by holding that a surety that satisfied a payment bond was

---

[2] Further, we respectfully disagree that, "after Pearlman, the Court of Claims expressly recognized the right of a surety to subrogate to the position of a defaulting contractor." ICW II, 55 Fed. Cl. at 537. None of the cases cited support that proposition. In Home Indemnity Co. v. United States, 180 Ct. Cl. 173, 376 F.2d 890, 893 (1967), the Court said, "Once the contractor's claims are satisfied by the surety, it is entitled to look to the retained fund for reimbursement," citing National Surety v. United States, 132 Ct. Cl. 724, 133 F. Supp. 381 (1955), and Continental Casualty Co. v. United States, 145 Ct. Cl. 99, 169 F. Supp. 945 (1959). See pp.4-5, above. In Fireman's Fund Ins. Co. v. United States, 190 Ct. Cl. 804, 421 F.2d 706, 708 (1970), the Court concluded that it was bound by Home Indemnity. In United Pacific Ins. Co. v. United States, 162 Ct. Cl. 361, 319 F.2d 893, 895 (1963), the Court upheld the surety's claim as against the trustee of the contractor's bankrupt estate, relying upon Pearlman. Significantly, the surety in United Pacific alleged that it was entitled "to succeed to the rights of the United States, as well as to the rights of subcontractors, laborers and materialmen." 319 F.2d at 894. It did not allege that it succeeded to the rights of the contractor.

subrogated both to the rights of the contractor and to the rights of the subcontractors." Nova Casualty Co. v. United States, 69 Fed. Cl. 284, 293 (2006). First, the language in USF&G relied upon by this Court is dicta, contained in a section addressing whether laborers and materialmen – not sureties – had enforceable rights against the United States. See USF&G, 475 F.2d at 1381-82. The pertinent discussion in USF&G had no bearing on the surety's claim in that case. Second, the analysis of the Court which would find subrogation to (1) the contractor's rights for purposes of establishing jurisdiction and (2) the subcontractors' rights for purposes of establishing a claim upon which relief may be granted is inconsistent with the doctrine that a subrogee cannot acquire what another whose rights he claims did not have. In this respect, the surety's claim must be analyzed in the same manner as addressed in Prairie State, where the Supreme Court said that "treating [the surety] as subrogated merely 'in the rights of [the contractor]' in the fund . . .was saying that he was subrogated to no rights whatever." 164 U.S. at 232.[3] If the contractor in this case had no rights to the funds at issue, the plaintiff, stepping into the contractor's shoes, similarly has no rights to the funds at issue.

In addition to its reliance upon Pearlman and USF&G, the plaintiff – and the decisions upon which it relies – argue that the disputed statement in ICW "'is inconsistent with the court's

---

[3] Plaintiff – and the decisions it upon which it relies – also rely upon Balboa Insurance Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985), for its statement that sureties were subrogated to rights of both laborers and materialmen and of contractors. Balboa relied upon the dicta in USF&G in its analysis of the court's jurisdiction to entertain the surety's claim. 775 F.3d at 1161. As the Court in ICW recognized, however, "Balboa and its progeny relied on Prairie State Bank, Henningsen, or Pearlman to find a waiver of sovereign immunity for equitable subrogation claims against the government. . . . [W]e can no longer rely on those three cases to find a waiver of sovereign immunity." ICW, 243 F.3d at 1372. Accordingly, the discussion of jurisdiction in Balboa can no longer be considered binding on this Court.

conclusion in the very same opinion that its earlier Balboa decision correctly stated the law of equitable subrogation.'" Pl. Reply at 11 (quoting Liberty Mutual, 50 Fed. Cl. at 51).

In ICW, the Government argued that, even if sovereign immunity did not bar the surety's claim, the surety that completed performance of the contract stepped into the shoes of the Government, not the contractor. See 243 F.3d at 1375 n.3. The Court disagreed, stating: "Pearlman stands for the proposition that the subrogee steps into the shoes both of the contractor against the government and the government against the contractor." While we respectfully disagree with the Court's interpretation of Pearlman as to the scope of the surety's rights to subrogation, we accept the Court's holding as binding precedent in cases involving performance bond sureties.

However, an earlier case decided by the Federal Circuit expressly rejected the claim that a payment bond surety is subrogated to the contractor's rights. In Admiralty Construction , Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998), the Court said:

> National argues that it may supplant the contractor, Admiralty, by the doctrine of equitable subrogation. In some limited circumstances, the doctrine of subrogation "entitl[es] sureties to succeed to the contractual rights of the contractor against the government." Ransom[v. United States], 900 F.2d [242,] 245 [1990]. In Balboa, 775 F.2d at 1158, this court stated:
>
>> When a contractor defaults under the contract, the obligation of the surety then arises under its performance and payment bonds. When the surety then finances the contract to completion, it is subrogated to the contractor's property rights in the contract balance.
>
> Id. at 1161 (first emphasis added). That is, to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond. See Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971, 975 (Fed.Cir.1988).

> National, however, did nothing under its performance bond to complete the defaulted contract or to finance the contract to completion. . . . National simply did not perform under its performance bond to acquire subrogation rights.

Accordingly, when the Federal Circuit expressly considered whether a payment bond surety is subrogated to the rights of the contractor, it rejected that contention. Thus, even if the court's dicta in ICW is not binding on this Court, the holding in Admiralty Construction is binding. But see Globe Indemnity Co. v. United States, 84 Ct. Cl. 587 (1937) (payment bond surety's right to bring a claim against the Government rests upon its subrogation to the rights of the contractor).

II. The United States Did Not Owe Any Contractual Duties To The Plaintiff

The plaintiff's claim – that the Government owed a duty to Travelers to withhold funds from M.A.T. – does not state a claim for which relief can be granted.

Prior to the Federal Circuit's decision in ICW, the case law "established that a surety can sue the Government in the Court of Federal Claims under the non-contractual doctrine of equitable subrogation." Admiralty Construction, 156 F.3d at 1221. In ICW, the Government argued that the United States had not waived sovereign immunity for such equitable claims. See ICW, 243 F.3d at 1370. The Federal Circuit agreed. It held, however, that jurisdiction under the Tucker Act was established when a subrogee, after stepping into the shoes of a Government contractor, asserted a contract claim against the Government. See id. at 1372.

Thus, in order for the plaintiff to state a claim upon which relief must be granted, it must establish (1) that it has stepped into the shoes of a Government contractor, and (2) that it has a contract claim against the Government. In this case, the plaintiff's complaint does not allege that the Government breached a contractual obligation. Accordingly, the plaintiff has failed to state a claim upon which relief can be granted.

CONCLUSION

For the reasons set forth above, this Court should deny plaintiff's motion for summary judgment and dismiss plaintiff's complaint pursuant to Rule 12(b)(6).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

May 19, 2006