# In the United States Court of Federal Claims

No. 05-1252C

(Filed: July 26, 2006)

* * * * * * * * * * * * * * * * * * * * * )
THE TRAVELERS INDEMNITY COMPANY, SUCCESSOR IN INTEREST BY MERGER TO GULF INSURANCE COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.
* * * * * * * * * * * * * * * * * * * * *

Trial on stipulated facts; subject matter jurisdiction; suretyship; equitable subrogation; sovereign immunity; payment and performance bonds issued in accord with the Miller Act for work on the Sector Gates Repair project in New Bedford, Massachusetts; notice to the government to stop payment to contractor; damages

Robert G. Barbour, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., McLean, Virginia, for plaintiff.

Doris S. Finnerman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch.

## OPINION AND ORDER

LETTOW, Judge.

This surety case stems from a contract entered into by M.A.T. Marine, Inc. ("M.A.T.") and the U. S. Army Corps of Engineers, New England Military District, for the Sector Gates Repair Project in New Bedford, Massachusetts. Travelers Indemnity Company ("Travelers"), as a surety for M.A.T., provided performance and payment bonds for the project for the benefit of

the United States as the obligee.[1] M.A.T. arguably defaulted on its obligations with respect to certain laborers and materialmen on the project, and consequently, Travelers issued payments to those subcontractors and suppliers to settle their claims under the payment bond. M.A.T. did successfully complete performance under the contract.

Travelers seeks to exercise its rights under the payment bond pursuant to the doctrine of equitable subrogation to recover contract funds that remained after performance under the contract had been accepted. Travelers contends that the government, which had retained a balance remaining on the contract, breached its duty as a stakeholder in disbursing that balance. Travelers argues that the government issued two payments to M.A.T. subsequent to receiving notice from Travelers that all payments to M.A.T. should not be released because of the then-pending claims against the contractor by its subcontractors and suppliers. Travelers asserts damages equal to the amount it alleges the government wrongfully disbursed to M.A.T. after Travelers provided the government with notice. The government, in turn, has moved to dismiss the present action on the ground that Travelers has failed to state a claim on which relief can be granted.[2] The government contends that Travelers, as a surety that has performed only under the payment bond, is not equitably subrogated to the rights of the contractor and therefore cannot seek damages from the United States.

On February 13, 2006, the court held a hearing to consider a joint motion by the parties to stay proceedings in the case. The court ultimately denied the motion and, with the agreement of the parties, adopted a schedule by which the parties would submit cross-motions for judgment predicated upon a joint stipulation of facts. Order of Feb. 13, 2006. A Joint Stipulation of Material Facts ("Stip.") was filed on March 10, 2006, pursuant to RCFC 56(h)(3). Travelers filed its motion for judgment on March 10, 2006, and the government responded with a motion to dismiss and opposition to plaintiff's motion on April 10, 2006. After both parties completed

---

[1]Under the contract, M.A.T.'s surety was the Gulf Insurance Company. Compl. ¶ 5. Subsequent to the project, but prior to the filing of plaintiff's complaint, Travelers succeeded by merger to the interests of Gulf Insurance Company. Consequently, all references to Travelers in this opinion and order include Gulf.

[2]The government has specifically moved to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), stating that plaintiff has failed to state a valid claim upon which relief can be granted. Defendant's Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mot.") at 1. Based on the government's argument, however, the motion is more properly considered as one seeking a dismissal for lack of subject matter jurisdiction under RCFC 12(b)(1). *See Fisher v. United States*, 402 F.3d 1167, 1175 (Fed. Cir. 2005). *Compare* Def.'s Mot. at 2 (contending that Travelers, as a payment bond surety, is subrogated only to the rights of the subcontractors), *with id*. at 4 (asserting that "the facts must establish that the surety first step[ped] into the shoes of a government contractor" as "a prerequisite . . . to jurisdiction under the Tucker Act." (internal citations and quotation marks omitted)).

briefing, the court held a concluding hearing on May 31, 2006. In effect, the case has proceeded as a trial on stipulated facts.

For the reasons stated below, Travelers' motion for summary judgment is granted and the government's motion to dismiss is denied.

**BACKGROUND**

On or about April 2003, the U.S. Army Corps of Engineers and M.A.T. entered into Contract No. DACW33-03-C-0006 ("contract") for a project designated as "Sector Gates Repair" in New Bedford, Massachusetts. Stip. ¶ 1. On April 8, 2003, M.A.T. and Travelers executed payment and performance bonds, with the United States as obligee, pursuant to the Miller Act, Pub. L. No. 74-321, § 1, 49 Stat. 793, 793 (codified at 40 U.S.C. § 3131(b)) (formerly codified at 40 U.S.C. § 270a). Stip. ¶ 2, Exhibit ("Ex.") 1 (Payment and Performance Bonds No. AE6298190). Both bonds were issued pursuant to a general agreement of indemnity between the surety and M.A.T. Compl. ¶ 5; *see* Stip. Ex. 2 (General Indemnity Agreement (May 24, 2000)).

Shortly thereafter, Travelers provided the government with notice by mail that it had paid $11,900 to Environmental Containment Systems, LLC, a subcontractor of M.A.T., and $2,125.85 to Contract Operations Planning, LLC for loss adjustment expenses, both under Travelers' payment bond. Stip. ¶ 4, Ex. 2 (Letter from Robert G. Barbour, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., to Maurice Beaudoin, Administrative Contracting Officer, Department of the Army (Apr. 23, 2004)). In the letter, Travelers also stated that it had received $21,276.55 in "unsettled payment bond claims" with respect to M.A.T.'s contract for the Sector Gates Repair project. *Id*. Consequently, Travelers requested that the government pay it $14,025.85 from any remaining contract funds and withhold an additional $21,276.55 from any further payments to M.A.T. Stip. ¶ 5, Ex. 2. Finally, Travelers informed the government that it had retained legal representation with respect to these matters and "demand[ed] that certain payments due or to become due under the . . . [c]ontract be withheld from M.A.T. . . . and paid over to [the surety] or held until [the surety] provides its consent to payment." *Id*. The government received this letter from Travelers no later than May 7, 2004. Stip. ¶ 6, Ex. 2 (Certified Mail Receipt (May 7, 2004)).[3]

On or about May 13, 2004, the government made two wire transfers to M.A.T. totaling $32,718.99. Stip. ¶ 7. At that time, M.A.T. had completed the Sector Gates Repair project and the government had accepted M.A.T.'s performance. *Id*.

---

[3]Travelers alleges that the government received a copy of this letter by facsimile or e-mail on or about April 27, 2004. Compl. ¶ 8.

Pursuant to the payment bond, Travelers made payments to three subcontractors and suppliers totaling $65,122.50. Stip. ¶¶ 8, 9, and Ex. 3.[4]

On December 2, 2005, Travelers filed its complaint against the government seeking $32,718.99 in damages plus interest and costs.[5]

## STANDARDS FOR DECISION

Jurisdiction must be established before the court may proceed with this or any other action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). The plaintiff, Travelers in this case, bears the burden of establishing that the court has subject matter jurisdiction over its claim. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When determining whether subject matter jurisdiction exists in a particular action, this court must accept all facts as they are presented in the complaint as true and "draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

"All federal courts are courts of limited jurisdiction." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). This court is no exception and has jurisdiction over a claim brought against the United States only if Congress has consented through a waiver of sovereign immunity. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003); *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such a waiver "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192 (citing *United States v. Williams*, 514 U.S. 527, 531 (1995); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981)).

The Tucker Act constitutes explicit consent for "any claim against the United States founded either upon . . . any Act of Congress . . . or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is insufficient alone to confer subject matter jurisdiction. The plaintiff must identify a substantive right that is enforceable against the United

---

[4]Travelers paid $18,850 to Environmental Containment Systems, LLC on March 17, 2004, $17,000 to Sterling Equipment, Inc. on April 11, 2005, and $29,272.50 to Global Remediation Services, Inc. on April 11, 2005. Stip. Ex. 3 (Check Nos. 3504, 5045, and 5044, respectively).

[5]M.A.T. has filed for bankruptcy protection. Stip. ¶ 11. Travelers has not filed suit against M.A.T. to recover its losses in connection with the payment bond provided for the contract. *Id.*

States for money damages. *Mitchell*, 463 U.S. at 216-17; *see United States v. Testan*, 424 U.S. 392, 398 (1976). Should the court find that it lacks subject matter jurisdiction to decide a case on its merits, it is required either to dismiss the action as a matter of law, *see Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985), or to transfer it to another federal court that would have jurisdiction. *See Gray v. United States*, 69 Fed. Cl. 95, 102-03 (2005).

**ANALYSIS**

A. Equitable Subrogation by a Surety Under a Payment Bond as a Basis for Jurisdiction Under the Tucker Act

"A surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government)." *Insurance Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001) (citing *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir. 1985)). If a surety is unable to rely on privity of contract as a jurisdictional basis for a claim against the government, the surety may be able to invoke the doctrine of equitable subrogation to step into the shoes of the contractor for the purpose of satisfying the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491(a). *See Insurance Co. of the West*, 243 F.3d at 1373 ("Neither the Federal Tort Claims Act nor the Tucker Act is limited to claims asserted by the original claimant."). There are "probably . . . few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136-37 (1962). The doctrine of equitable subrogation has been described by the Supreme Court as one "'not founded on contract[, but rather,] . . . a creature of equity . . . enforced solely for the purpose of accomplishing the ends of substantial justice . . . and . . . independent of any contractual relations between the parties.'" *Id*. at 136 n.12 (quoting *Memphis & L.R.R. Co. v. Dow*, 120 U.S. 287, 301-302 (1887)). Along these lines, the preliminary question here is whether Travelers, as a payment-bond surety, may invoke the doctrine of equitable subrogation to step into the shoes of M.A.T. to assert a claim directly against the government for money damages.

Several recent decisions bear on this issue. *Commercial Casualty Ins. Co. of Ga. v. United States*, 71 Fed. Cl. 104 (2006); *Liberty Mutual Ins. Co. v. United States*, 70 Fed. Cl. 37 (2006); and *Nova Casualty Co. v. United States*, 69 Fed. Cl. 284 (2006), each examine the right of a payment-bond surety to invoke the doctrine of equitable subrogation and assert rights to money damages under the Tucker Act.

*Commercial Casualty*, *Liberty Mutual*, and *Nova Casualty* analyze a line of precedents that stretch back over one hundred years. In 1896, the Supreme Court held that a plaintiff surety could apply the doctrine of equitable subrogation in seeking retained funds from the government for completing performance of a government contract under its performance bond. *Prairie State Nat'l Bank of Chicago v. United States*, 164 U.S. 227, 240 (1896). The Court extended this reasoning to a payment-bond surety in *Henningsen v. United States Fidelity & Guaranty Co. of Baltimore, Md.*, 208 U.S. 404 (1908). There, the surety, who had fulfilled its obligations only

under the payment bond, sought to restrain the appellants from receiving the funds that remained on the contract and that the government had retained. *Id*. at 405. In *Henningsen*, the appellants were the contractors and a bank that had provided the contractors with a loan. The appellants sought the retained funds to satisfy the contractors' debts to the bank. *Id*. at 404-05. The Court concluded that the surety's equity was superior to the appellants' because the surety "paid the laborers and materialmen, and thus released the contractor from his obligation to them." *Id*. at 410. Therefore, relying on its prior analysis in *Prairie State*, the Court held that the "surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation." *Id*. at 411 (quoting *Henningsen v. United States Fid. & Guar. Co. of Baltimore, Md.*, 143 F. 810, 813 (9th Cir. 1906)).

The Supreme Court revisited the rights of sureties under the doctrine of equitable subrogation in *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234 (1947). The surety's claim arose when the government, prior to releasing retained funds that were due the surety because it had fulfilled its payment-bond obligations, deducted a portion of the amount that the contractor owed the government for failing to complete performance under the contract. *Id*. at 238. The surety, endeavoring to prevent the government from setting-off a portion of the retained funds, argued that it was subrogated either to the rights of the laborers and materialmen that it had paid, or in the alternative, to the government itself. *Id*. at 240-44. The Court ultimately determined "that laborers and materialmen do not have enforceable rights against the United States for their compensation" and that "[o]ne who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made." *Id*. at 241-42. Consequently, the court concluded that the surety could not rely on being equitably subrogated to the subcontractors' rights to prevent the government from applying its set-off. *Id*. The Court further rejected the surety's argument that it could claim the rights of the government itself for the purpose of asserting a superior claim to the retained funds. *Id*. at 242-43. Rather, the Court held "that the government properly used its right to set off its independent claim" against the contractor. *Id*. at 244; *see also Security Ins. Co. of Hartford v. United States*, 428 F.2d 838, 841-43 (Ct. Cl. 1970) (applying the holding in *Munsey Trust* and distinguishing between the superiority of a surety's claim under a performance bond versus a payment bond with respect to the government's right to set off).[6]

---

[6]The holding in *Munsey Trust* is limited to a ruling that the government could make a set off when faced with the competing claim of a surety alleging equitable subrogation. The *Restatement (Third) of Suretyship and Guaranty* has rejected the "*Munsey Trust* doctrine" because it allows the obligee, the government, to set off a claim against the principal obligor, the contractor, that arises out of a separate transaction, with priority over the secondary obligor, the surety, who has a claim to return performance obtained through subrogation. *See Restatement (Third) of Suretyship and Guaranty* § 31 cmt. d (1996). The *Restatement* took this position because the performance by the surety could free the contractor of two obligations and thus unjustly enrich the contractor. *See Nova Casualty*, 69 Fed. Cl. at 293 n.7.

Fifteen years later, in 1962, the Court again addressed the rights of sureties to recover funds retained by the government, but in this instance the issue was whether a trustee in bankruptcy of a government contractor or the contractor's payment-bond surety had the superior claim. *Pearlman*, 371 U.S. at 133. In *Pearlman*, the Court revisited *Prairie State* and *Henningsen*, affirming that "[t]hese two cases . . ., together with other cases that have followed them, establish the surety's right to subrogation in [a retained] fund *whether its bond be for performance or payment*." *Id*. at 139 (internal footnote omitted) (emphasis added).[7] The Court also rejected the argument that *Munsey Trust* overruled the holdings in *Prairie State* and *Henningsen*. *Id*. at 140-41 (holding that "*Munsey* left the rule in *Prairie Bank* and *Henningsen* undisturbed"). Ultimately, the Court outlined the rights of all the parties in a payment-bond suretyship relationship and held

> that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed the job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it.

*Id*. at 141.[8]

Thereafter, the Court of Claims analyzed the holdings of *Munsey Trust* and *Pearlman* and distinguished the rights of a surety under a performance bond versus a payment bond with respect to the government's priority to retained funds in *United States Fidelity & Guaranty Co. v. United States*, 475 F.2d 1377 (Ct. Cl. 1973) (*en banc*). In *U.S. Fidelity & Guaranty*, a payment-bond surety asserted three claims for a variety of funds that the government either still possessed or

---

[7]Even prior to *Pearlman*, the Court of Claims concluded that a payment-bond surety's right to recover funds retained by the government "rests upon the doctrine of subrogation to the rights of" the contractor. *Globe Indem. Co. v. United States*, 84 Ct. Cl. 587, 593 (1937). "[S]uch right of the surety to lay claim against the Government to [retained funds due the contractor] arises only by reason of their subrogation initially to the rights of the principal, the contractor, with the United States." *Id*. at 595 (ultimately holding that because the contractor had committed fraud, thus vitiating the contractor's rights to any retained funds, the surety in turn could not assert any rights through equitable subrogation to the retained funds).

[8]The Court's holding was supported by five justices, with a concurrence by Justice Clark and two other justices, and one dissent. In his concurrence, Justice Clark stated that the Court had not held in *Prairie State* and *Henningsen* "that laborers and materialmen had any right against the United States." *Pearlman*, 371 U.S. at 143. Justice Clark concluded that "the equities existing here in favor of the surety grow out of the contract between it and the contractor . . . , which was made in consideration of the execution of the bond," and thus any funds due the contractor would be assigned to the surety in the event the contractor breached the contract. *Id*.

had allegedly improperly disbursed. *Id*. at 1380. The court, "to define precisely the rights of each of the parties in this case," examined *Munsey Trust* and *Pearlman* and concluded that "the most apparent" manner in which to reconcile any differences between the two Supreme Court decisions would be "that the surety was entitled to the benefit of *all* the rights of the laborers and materialmen whose claims it paid *and* those of the contractor whose debts it paid." *Id*. at 1381-82 (emphasis added). Consequently, "[t]he surety then is subrogated to the rights of the contractor who could sue the Government since it was in privity of contract with the United States. The surety is likewise subrogated to the rights of the laborers and materialmen who might have superior equitable rights to the retainage but no right to sue [the] defendant." *Id*. The Court of Claims thereafter applied the *Munsey Trust* rule of priority in light of these legal conclusions and held that "[a] surety that pays on a performance bond . . . has priority over the United States to the retainages in its hands[, but a] surety that pays on its payment bond . . . does not have priority." *Id*. at 1383. *U.S. Fidelity & Guaranty* has been explicitly or implicitly reaffirmed by the Federal Circuit and its predecessors on a number of occasions. *See Dependable Ins. Co. v. United States*, 846 F.2d 65, 67 (Fed. Cir. 1988) (stating that a performance-bond surety, unlike a payment-bond surety, "becomes subrogated *not only to the rights of the prime contractor* but to those of the government" (emphasis added)); *Balboa*, 775 F.2d at 1161; *United Elec. Corp. v. United States*, 647 F.2d 1082, 1083-86 (Ct. Cl. 1981) ("we have no reason to question" *U.S. Fidelity & Guaranty*); *Great Am. Ins. Co. v. United States*, 492 F.2d 821, 828 (Ct. Cl. 1974).

In a case that was factually very similar to the present matter, *Home Indemnity Co. v. United States*, 376 F.2d 890 (Ct. Cl. 1967), the Court of Claims applied the reasoning from *Pearlman* in determining that a payment-bond surety, subrogated to the contractor's equitable rights, could sue the government for the recovery of improperly released funds. *Id*. at 893-94 (citing *Newark Ins. Co. v. United States*, 169 F. Supp. 955 (Ct. Cl. 1959)).[9] In *Home Indemnity*, a surety issued payment and performance bonds to a government contractor. *Id*. at 892. The contractor completed the contract, at which time the government retained approximately $6,200 in funds due. *Id*. Concurrently with the completion of the contract, the surety informed the government in writing that two of the contractor's suppliers had unpaid accounts. *Id*. In light of such claims, the surety "demanded that 'the balance of the contract funds be retained pending settlement of the unpaid job expenses.'" *Id*. Two months later, after a Comptroller General's decision, the government released the retained funds in their entirety to the contractor despite the surety's request that the funds be retained. *Id*. Thereafter, the surety paid the two suppliers approximately $9,000 and settled their outstanding claims. *Id*. The surety filed suit against the

[9]In *Newark Insurance*, the Court of Claims had addressed facts similar to those in *Home Indemnity*. 169 F. Supp. at 955-56. The government argued that "since it ha[d] no money in its hands which [wa]s owing to anyone" because it had already released the retained funds, "there [wa]s no basis upon which it may be held liable to the" surety. *Id*. at 956. The court rejected this argument and concluded that a surety, which had fulfilled its obligations under the payment bond and had provided the government with notice to retain the remaining contract balance, could file suit against the government for improperly releasing such funds. *Id*. at 957.

government seeking to recover the approximately $6,200 that it alleged the government improperly paid to the contractor. *Id*.

In upholding the surety's claim, the Court of Claims recognized the well-established precedents that performing sureties have rights in funds retained by the government. *Home Indem.*, 376 F.2d at 892-93 (citing *Prairie State*, *Henningsen*, and *Pearlman*). The court determined that once the contract in *Home Indemnity* had been completed, the government was merely a stakeholder and concluded "that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff," which action entitled the plaintiff surety to damages. *Home Indem.*, 376 F.2d at 894-95; *see also Fireman's Fund Ins. Co. v. United States*, 421 F.2d 706, 708 (Ct. Cl. 1970) (reaffirming *Home Indemnity* and noting that "it is clear that [a surety's] rights of subrogation and property interest in the final contract payment exist when the surety is called upon to pay a materialman *to the same extent* as when it is required to complete the contract." (citing *Pearlman*, 371 U.S. 132) (emphasis added)). *But cf. Admiralty Constr., Inc. v. Dalton*, 156 F.3d 1217, 1222 (Fed. Cir. 1998) (stating, in dicta, that "to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond.") (citing *Aetna Cas. & Sur. Co. v. United States*, 845 F.2d 971, 975 (Fed. Cir. 1988)).[10]

In sum, decisions by the Supreme Court and this circuit are generally uniform in holding that (1) a surety that satisfies its payment, but not its performance, bond and settles all unpaid claims of laborers and materialmen is subrogated to the equitable rights both of the subcontractors and of the prime contractor in any retained contract funds, with the limitation that (2) a payment-bond surety has a priority inferior to the government's right to set off the remaining contract balance if the United States has an unsettled claim against the contractor.

B. Travelers' Invocation of Equitable Subrogation

The government contests this long-standing line of precedent and argues that Travelers' claim should be dismissed because the surety is not equitably subrogated to the rights of the government contractor, M.A.T., *i.e.*, a party that was in privity with the government, for purposes of invoking this court's jurisdiction under the Tucker Act. Defendant's Reply in Support of its Motion to Dismiss ("Def.'s Reply") at 1, 9. The government defines the issue as whether "a surety which has performed pursuant to a payment bond steps into the contractor's shoes." *Id*. at 2. The government relies primarily on the Federal Circuit's opinion in *Insurance Company of*

---

[10]The "central issue" before the court in *Admiralty* was "whether the [Contract Disputes Act] permits the [surety] to bring this claim on behalf of the [the prime contractor]." *Admiralty*, 156 F.3d at 1220. The Federal Circuit held that the surety could not assert such a claim under the Contract Disputes Act because the surety was neither a contractor nor in privity with the government. *Id*. at 1222.

*the West v. United States*, 243 F.3d at 1371, in asserting that a surety may only be subrogated to the rights of a government contractor if the surety enters into a takeover agreement or otherwise fulfills obligations under a performance bond by completing performance. Def.'s Mot. at 3-4; Def.'s Reply at 1. The government argues that because Travelers acted only under the payment bond, it is subrogated only to the equitable rights of the subcontractors and suppliers, who were never in privity with the government, and thus Travelers has no enforceable rights against the government. Def.'s Reply at 1-2.

In *Insurance Company of the West*, the Federal Circuit had to determine "whether a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the United States." 243 F.3d at 1369. The issue had arisen subsequent to the Supreme Court's decision in *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999), an opinion the government in *Insurance Company of the West* had argued "demonstrate[d] that the government ha[d] not waived sovereign immunity for a surety's claims based on equitable subrogation." *Insurance Co. of the West*, 243 F.3d at 1370.[11] The Federal Circuit rejected the government's assertion and held that there "was nothing particularly novel about" the Supreme Court's decision in *Blue Fox*, *id.* at 1371, and that *Blue Fox* "did not upset the longstanding rule that" a subrogee that steps into the shoes of a government contractor may rely on the Tucker Act's waiver of sovereign immunity. *Id*. at 1369 (citing *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366 (1949)).

The government in the present matter, however, relies not on the holding of *Insurance Company of the West*, but on a brief comment in the opinion about the rights of payment-bond sureties: "It is well-established that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor[s]. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." 243 F.3d at 1371 (citing *Munsey Trust*, 332 U.S. at 240-41).[12] The government, as it has on other

---

[11]The Supreme Court in *Blue Fox* held that a subcontractor could not seek to collect a debt from an insolvent government contractor by asserting an equitable lien directly against the Army. 525 U.S. at 256-57. The Court held that the government had not waived sovereign immunity with respect to such suits. *Id*. at 257. In the course of its opinion, the Court stated that neither *Prairie State*, *Henningsen* nor *Pearlman* "involved a question of sovereign immunity." *Id*. at 264-65. The Court further noted that those cases "do not in any way disturb the established rule that, unless waived by Congress, sovereign immunity bars subcontractors or other creditors from enforcing liens on Government property or funds to recoup their losses." *Id*. at 265; *see also United Elec.*, 647 F.2d at 1083 (holding eighteen years prior to *Blue Fox* that subcontractors may not sue the government directly for their compensation).

[12]The portion from *Munsey Trust* to which the Federal Circuit cites does not support the quoted statements. At the cited pages 240 and 241 of *Munsey Trust*, the Supreme Court noted that the Court of Claims would have to recognize the superiority of a government claim over a claim by a contractor who itself owed the government a debt. 332 U.S. at 240. The Court then

recent occasions, *see, e.g., Commercial Casualty*, 71 Fed. Cl. at 109, *Liberty Mutual*, 70 Fed. Cl. at 41, and *Nova Casualty*, 69 Fed. Cl. at 294, would apply this passage in contravention of Supreme Court and Federal Circuit precedent.

In *Insurance Company of the West*, the Federal Circuit appropriately described the relationship between a payment-bond surety and a subcontractor. In delineating the rights of sureties with respect to the recovery of funds retained by the government, however, the language from *Insurance Company of the West* is incomplete and does not convey the holdings of prior Supreme Court, Federal Circuit, and Court of Claims decisions. *See Nova Casualty*, 69 Fed. Cl. at 295-96. Those prior opinions reasoned that a surety that discharges all of its obligations under the payment bond is also equitably subrogated to the rights of the prime contractor, whose debts the surety has satisfied. *See, e.g., Pearlman*, 371 U.S. at 141 (holding, in part, that a payment-bond surety is entitled to the benefit of the equitable rights of both the contractor, had the contractor completed performance and paid his laborers and materialmen, and the subcontractors); *U.S. Fid. & Guar.*, 475 F.2d at 1381-82; *Home Indem.*, 376 F.2d at 893-94. The Federal Circuit and predecessors have long recognized, even prior to the Court's holdings in *Munsey Trust* and *Pearlman*, that a payment-bond surety may become equitably subrogated to both the rights of the subcontractors, whose claims it has paid, and the prime contractor, whose debts it has satisfied. *See*, *e.g.*, *Balboa*, 775 F.2d at 1161; *United Elec.*, 647 F.2d at 1086; *Globe Indem.*, 84 Ct. Cl. at 595-96. The Federal Circuit's statements in *Insurance Company of the West* about a payment-bond surety's rights are dicta that cannot be read to have altered the principles of suretyship previously applied by the Supreme Court and this circuit for nearly a century. *See Pearlman*, 371 U.S. at 141 (holding that the rule from *Prairie State* and *Henningsen* was left "undisturbed" by *Munsey Trust* and that it "[could] not say that such a firmly established rule was so casually overruled.").[13]

---

stated "that laborers and materialmen do not have enforceable rights against the United States for their compensation." *Id*. at 240-41. The Court concludes by refuting the plaintiff's argument in that case that laborers and materialmen may place a lien on contract funds retained by the government. *Id*. at 241-42. Accordingly, the portion of the decision in *Munsey Trust* cited by the Federal Circuit in *Insurance Company of the West* seems to describe the substantive relationship between subcontractors and the government. The cited text does not support the proposition that a surety that fulfills its payment bond obligations "is subrogated only to the rights of the subcontractor[s]" and "does not step into the shoes of the contractor." *Insurance Co. of the West*, 243 F.3d at 1371.

[13]The Federal Circuit has defined dicta as "statements made by a court that are 'unnecessary to the decision in the case, and therefore not precedential (though [they] may be considered persuasive).'" *Co-Steel Raritan, Inc. v. International Trade Comm'n*, 357 F.3d 1294, 1307 (Fed. Cir. 2004) (quoting *Black's Law Dictionary* 1100 (7th ed. 1999)). The holding of *Insurance Company of the West* was "that a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375. The subrogee in that case was a surety

Finally, the Federal Circuit in *Insurance Company of the West* stated explicitly that "*Balboa* correctly states the law of equitable subrogation." 243 F.3d at 1375 n.3. In *Balboa*, in analyzing how the law of equitable subrogation is delineated, the Federal Circuit affirmed its own statement from *U.S. Fidelity & Guaranty*, from which *Balboa* directly quotes, describing the substantive right of a payment-bond surety to sue the government. *See Balboa*, 775 F.2d at 1161 ("'The surety then is subrogated to the rights of the contractor who could sue the Government.'" (quoting *U.S. Fid. & Guar.*, 475 F.2d at 1382)). Consequently, despite the two-sentence passage from *Insurance Company of the West* upon which the government relies, the Federal Circuit elsewhere in that decision acknowledged the longstanding law of this circuit, as described in *Balboa*.

The government further argues that the Supreme Court did not expand the equitable-subrogation rights of payment-bond sureties in *Pearlman* to include those of the prime contractor. Def.'s Reply at 3. The Court in *Pearlman*, however, held explicitly that such a surety was "entitled to the benefit of all" the rights that the Court had previously delineated, including "the contractor, had he completed his job and paid his laborers and materialmen." *Pearlman*, 371 U.S. at 141.[14] This court is bound by the holding in *Pearlman*. Thus, the court rejects the

---

under a performance bond. *See Insurance Co. of the West v. United States*, 55 Fed. Cl. 529, 532 n.5 (2003), *on remand from Insurance Co. of the West*, 243 F.3d 1367. Therefore, the passage from *Insurance Company of the West* relied upon by the government "should be read in the light of the court's central holding and the controlling fact in that case," *F. Alderete Gen. Contractors, Inc. v. United States*, 715 F.2d 1476, 1479 (Fed. Cir. 1983), and "'cannot be considered binding authority.'" *Co-Steel Raritan*, 357 F.3d at 1307 (quoting *Kastigar v. United States*, 406 U.S. 441, 454-55 (1972), and citing *Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988)). *See Commercial Casualty*, 71 Fed. Cl. at 108 n.3 (concluding that the language from *Insurance Company of the West* cited by the government is dicta); *Liberty Mutual*, 70 Fed. Cl. at 51 (same); *Nova Casualty*, 69 Fed. Cl. at 296 n.12 (same).

[14]In *Pearlman*, the Supreme Court, after it delineated all the rights available to a payment-bond surety, cited in support a number of cases from the Court of Claims. 371 U.S. at 141 n.23. ("Our result has also been reached by the Court of Claims in cases substantially like ours."). The government contends that the cited cases did not conclude that a payment-bond surety is subrogated to the equitable rights of the contractor. Def.'s Reply at 4-5. The government, however, mischaracterizes some of the cases. Respecting *National Surety Corp. v. United States*, 133 F. Supp. 381 (Ct. Cl. 1955), the government implies that the payment-bond surety in that case was only subrogated to the equitable rights of the government, not the contractor. Def.'s Reply at 5. The surety in that case, however, argued that it was subrogated to the equitable rights of the contractor and the government. *See National Sur. Corp.*, 133 F. Supp. at 383. Ultimately, the Court of Claims concluded that the surety was subrogated to the equitable rights of all three parties, namely the subcontractors, the contractor, and the government, similar to the eventual holding in *Pearlman*. *National Sur. Corp.*, 133 F. Supp. at 384 (stating that the surety becomes equitably subrogated to the rights of both the government and the laborers and materialmen), 386

government's argument and concludes that a payment-bond surety may be equitably subrogated to the rights of a government contractor. *See United Pac. Ins. Co. v. United States*, 319 F.2d 893, 895 (Ct. Cl. 1963) (concluding that *Pearlman's* holding is dispositive).

Ultimately, this court is bound by the collective holdings from *Prairie State*, *Henningsen*, *Munsey Trust*, and *Pearlman*, as well as those by the Federal Circuit and its predecessors cited above.[15] This court therefore concludes that the Tucker Act's waiver of sovereign immunity encompasses the claim of a surety which has satisfied all of its obligations under a payment bond and is therefore subrogated to the equitable rights of the contractor, to recover from the United States an amount equal to the damages it suffered with respect to the payment bond. Accordingly, this court has jurisdiction to entertain the merits of Travelers' claim in this case.

### C. Travelers' Claim for Damages Arising from its Subrogation of Equitable Rights Under the Payment Bond

The parties have stipulated that Travelers informed the government in writing no later than May 7, 2004 that the contractor, M.A.T., was in default of its obligation to pay its suppliers. Stip. ¶¶ 4-6, Ex. 2. Furthermore, both parties agree that in the notice, Travelers demanded that the government withhold further payments from M.A.T. absent Travelers' written consent to the contrary. *Id*. Nonetheless, on May 13, 2004, by which time M.A.T. had completed performance, which performance had been accepted, the government released the remaining contract funds, $32,718.99, to M.A.T. Stip. ¶ 7. The parties stipulate that Travelers paid $65,122.50 to three of M.A.T.'s contractors and suppliers to satisfy all unpaid claims against M.A.T. Stip. ¶¶ 8-9, Ex. 3.

---

(determining the surety is equitably subrogated to the contractor's rights). *See also Royal Indem. Co. v. United States*, 93 F. Supp. 891, 894 (Ct. Cl. 1950) (concluding that the contract between the contractor and the surety created an equity interest in any remaining proceeds for the surety). *But cf. Continental Cas. Co. v. United States*, 169 F. Supp. 945, 947 (Ct. Cl. 1959) (determining that the surety was subrogated to the equitable rights of the government, without noting any potential subrogation to the equitable rights of the contractor).

[15]Other circuits have also held that a payment-bond surety has a right of equitable subrogation over retained contract funds. *See National Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1270-72 & n.15 (11th Cir. 2003) (citing the Federal Circuit's decision in *Dependable Ins.*, 846 F.2d at 67, and distinguishing the priorities of claims advanced by a performance-bond surety versus a payment-bond surety); *Universal Bonding Ins. Co. v. Gittens and Sprinkle Enters., Inc.*, 960 F.2d 366, 375-76 (3d Cir. 1992) (stating that it is "satisfied that the United States Court of Claims . . . correctly reconciled [*Munsey Trust* and *Pearlman*] in *United States Fidelity & Guar.*"); *Industrial Bank of Wash. v. United States*, 424 F.2d 932, 934 (D.C. Cir. 1970); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 318-21 (5th Cir. 1967).

"[W]here the Government has on hand contract funds owing for work done and is alerted, by the surety, to the possibility of unpaid materialmen's claims, and to the surety's demand that the contract funds be protected . . . , it may not dispense those funds to the contractor – at least without running the distinct risk of having to pay twice." *Transamerica Premier Ins. Co. v. United States*, 32 Fed. Cl. 308, 314 (1994) (citing *International Fid. Ins. Co. v. United States*, 25 Cl. Ct. 469, 477 (1992); *American Fid. Fire Ins. Co. v. United States*, 513 F.2d 1375, 1380 (Ct. Cl. 1975); *Great Am. Ins.*, 492 F.2d at 825; *Home Indem.*, 376 F.2d at 893; *Newark Ins. Co.*, 169 F. Supp. at 957). In this case, all of the necessary elements are present for the court to conclude that the government violated its duty as a stakeholder with respect to Travelers' subrogated equitable rights in the $32,718.99 of the contract balance that the government retained.

First, "[a]bsent a viable allegation of full performance under the payment bond, the surety would be unable to invoke the doctrine of equitable subrogation." *Nova Casualty*, 69 Fed. Cl. at 294; *see U.S. Fid. & Guar.*, 475 F.2d at 1381 (citing *American Sur. Co. v. Westinghouse Elec. Mfg. Co.*, 296 U.S. 133, 136 (1935); *North Denver Bank v. United States*, 432 F.2d 466 (Ct. Cl. 1970)) (holding that a plaintiff surety had to pay all outstanding claims owed by the contractor or it otherwise would "not be permitted to share" in any retained funds held by the government). Here, there is no dispute that Travelers satisfied all of its obligations under the payment bond.

Second, when a "surety of the unsatisfied claims of the materialmen" notifies the government of such claims, "the Government [becomes] a stakeholder with respect to the amount not yet expended under the contract that it holds at the time of notification of default." *Balboa*, 775 F.2d at 1162 (relying on *Great Am. Ins. Co.*, 492 F.2d at 825); *see Transamerica Premier*, 32 Fed. Cl. at 313 (stating that the government's obligation to exercise reasonable care as a stakeholder is triggered when it receives notice from a surety that the contractor is in actual or threatened default under one of its bonds). However, "[n]otice by the surety is essential before any governmental duty exists." *Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495, 498 (Fed. Cir. 1990) (citing eleven cases from the Federal Circuit and its predecessors as standing for the proposition that the government as a stakeholder owes a duty to a surety that provides notice). In addition, notice must be provided by the surety and not a third party. *See id*. at 499. Here, it is stipulated that Travelers provided notice to the government of the contractor's default prior to the government's release of the retainage. Stip ¶¶ 4-6, Ex. 2.

Moreover, "there is a significant difference between the Government's role before and after completion of performance on a contract." *Balboa*, 775 F.2d at 1164 (citing *Argonaut Ins. Co. v. United States*, 434 F.2d 1362, 1367-68 (Ct. Cl. 1970)). Consequently, in cases where the surety notifies the government that the contractor is in default on one of its bonds, but performance under the contract has not been completed, the government has "broad discretion and flexibility" in deciding whether to withhold progress payments. *Balboa*, 775 F.2d at 1164 (citing *Argonaut Ins. Co.*, 434 F.2d at 1367-68; *U.S. Fid. & Guar. Co. v. United States*, 676 F.2d 622, 628 (Ct. Cl. 1982)); *see Ransom v. United States*, 17 Cl. Ct. 263, 272-74 (1989), *aff'd*, 900 F.2d 242 (Fed. Cir. 1990). Here, however, performance was complete, and the government had already accepted performance under the contract when it made two wire transfers to the contractor equaling $32,718.99. Stip. ¶ 7. Therefore, the government as a stakeholder is bound

by the traditional duty of reasonableness, and is not accorded the greater discretion it otherwise would have been permitted had M.A.T. not completed performance.

The court concludes that the government violated its duty as a stakeholder with respect to the $32,718.99 of retainage when it released these funds to the contractor, after accepting performance, despite Travelers' notice that the contractor was in default of his obligations under the payment bond.[16] The court finds that the government accordingly is liable to Travelers for the amount of the retainage, $32,718.99.

D. Interest

Travelers makes a claim for interest on the amount of damages awarded. Compl. at 4. However, "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516(a). The Supreme Court "repeatedly has made clear that [28 U.S.C. § 2516(a)] merely codifies the traditional legal rule regarding the immunity of the United States from interest." *Library of Congress v. Shaw*, 478 U.S. at 317, *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 114, 105 Stat. 1071, 1079 (1991). In the instant case, the award of damages has not been made under a statute that provides for interest on an award as, for example, the Contract Disputes Act does. *See* 41 U.S.C. § 611. Therefore, interest has not been included in the award.

**CONCLUSION**

For the reasons set forth above, plaintiff's motion for judgment on stipulated facts is GRANTED. Travelers is awarded damages in the amount of $32,718.99. No interest is awarded. The clerk shall enter final judgment in favor of Travelers for this specified amount. The defendant's motion to dismiss is correspondingly DENIED.

---

[16]As the Court of Claims stated in *Home Indemnity*:

> Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them. If his position as stakeholder becomes uncomfortable, and the claimants do not take steps to get a judicial solution of the question, the law has provided him with an interpleader proceeding by which he can deposit the stake in court and walk out free of the annoyance of being in the middle.

376 F.2d at 894 (quoting *Newark Ins.*, 169 F. Supp. at 957).

Travelers is awarded costs.

IT IS SO ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge